IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

23-00990

DENNIS MISCHLER,
      Petitioner

VERSUS

TIM HOOPER, WARDEN
      Respondent

NUMBER:

FILED: SECT. 1 MAG. 5

_____
DY. CLERK

MEMORANDUM OF LAW SUPPORTING PETITION
UNDER 28 U.S.C. SECTION 2254 FOR
WRIT OF HABEAS CORPUS

Submitted *Pro Se* By:

*Dennis Mischler*
Dennis Mischler
D.O.C. # 731698
La. State Penitentiary
Angola, Louisiana
70712

# TABLE OF CONTENTS

*JURISDICTION*... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ....1

*STATEMENT OF THE CASE*... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...1

*CLAIM NUMBER ONE*... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... .4
        COUNSEL FAILED TO CONDUCT A PROPER INVESTIGATION TO LEARN FACTS NECESSARY TO PRESENT A FULL AND PROPER DEFENSE AND PRESENT EVIDENCE FAVORABLE TO THE PETITIONER, CONTRARY TO CONSTITUTIONAL PROTECTIONS SET FORTH BY LOUISIANA AND THE UNITED STATES
        ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ......6

    I    Counsel Failed to Investigate Evidence That Someone Else Download or Otherwise Obtained the Pornography
        ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...11

    II    Counsel Failed to Investigate and Find Witnesses Who Could Have Presented Evidence on Behalf of the Defense
        ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...14

    III    The Defense Counsel Failed to Investigate and Find Evidence to Contradict State Witnesses at Trial
        ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...18

    IV    Counsel Developed No Meaningful Relationship With Mischler and Was Therefore Not Able to Establish Sufficient Trust to Learn Information Critical to the Defense
        ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...20

        *ACCUMULATION OF INEFFECTIVE ASSISTANCE OF COUNSEL* ...............22

*CLAIM NUMBER TWO*
        MR. MISCHLER HAS BEEN DENIED THE BASIC PRINCIPLES OF THE LAW WHERE HE HAS BEEN DENIED THE RIGHT TO PRESENT A DEFENSE, THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AND THE OVERALL DUE PROCESS AND EQUAL PROTECTIONS OF LAW CONTRARY TO CONSTITUTIONAL PROTECTIONS OF LOUISIANA AND THE UNITED STATES.
        ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...23

*SUMMATION*... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...38

*CONCLUSION*... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ..41

*CERTIFICATE & VERIFICATION*... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...42

*EXHIBITS and ATTACHMENT*... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...43

# TABLE OF AUTHORITIES

PAGE

_United States Constitution_

Amendment

1st ................................................................................... **24**

6th ................................................................. **5, 7, 16, 18, 20, 22, 23, 40**

14th ...................................................................... **22, 26, 34**


_United States Supreme Court_


_Beauharnais v. People of State of Illinois,_ 343 U.S 250,
72 S.Ct 725, 96 L.Ed 919 (1952)............................................**34**

_Bounds v. Smith,_ 430 U.S. 817,
97 S.Ct 1491, 52 L.Ed.2d 72 (1977) ......................................**31**

_U.S. v. Cronic_ 466 U.S. 648,
104 S.Ct 2039, 80 L.Ed.2d 657 (1984) ..........................**7, 8, 23**

_Duncan v. Louisiana,_ 391 U.S. 145,
88 S.Ct 1444, 20 L.Ed.2d 491 (05/20/68)............................**23**

_Haines v. Kerner,_ 404 US 519,
92 S.Ct 594, 30 L.Ed.2d 652 (1972)....................................**31**

_In re Winship,_ 397 U.S. 358,
90 S.Ct 1068, 25 L.Ed.2d 368 (3/31/70) ...........................**23**

_Kyles v. Whitley,_ 514 US 419,
115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ........................**6, 22**

_Lockhart v. Fretwell,_ 506 U.S. 364,
113 S.Ct. 838, 122 L.Ed.2d 180 (1993)...............................**6**

_McNeil v. United States,_ 508 U.S. 106,
113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ..............................**31**

_Powell v. Alabama,_ 287 U.S. 45,
53 S.Ct. 55, 77 L.Ed.2d 158 (1932) ...................................**23**

_Strickland v. Washington,_ 466 U.S. 668,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).......................**5, 6, 8, 9**

_Uphaus v. Wyman,_ 360 U.S 72,
79 S.Ct 1040, 3 L.Ed.2d 1090 (1959)..................................**33**


_United States Fifth Circuit_

_Baldwin v. Maggio,_ 704 F.2d 1325 (5th Cir.1983)...................**8**

_Bryant v. Scott,_ 28 F.3d 1411 (5th Cir.1994) ........................**9**

_Fitzgerald v. Estelle,_ 505 F.2d 1334 (5th Cir. 1974)...............**5**

_Guidroz v. Lynaugh,_ 852 F.2d 832 (5th Cir 1988)..................**31**

_Johnson v. Quarterman,_ 479 F.3d. 358 (5th Cir 2007).............**31**

_Martin vs. Maggio,_ 711 F.2d 1273 (5th Cir.1983)..................**10**

_Nealy v. Caban,_ 764 F.2d 1173 (5th Cir.1985).................**7-9, 11**

_Profitt v. Waldron,_ 831 F.2d 1245 (5th Cir.1987)................**7, 9**

_Vella v. Estelle,_ 708 F.2d 954 (5th Cir.1983) ......................**10**

ii

*Other United States Courts*

*Bonner v. State*, 765 S.W.2d 286 (Mo. App. 1988)..................................20
*Chambers v. Armontrout*, 907 F.2d 825 (8th Cir. 1990)...........................16
*Coles v. Peyton*, 389 F.2d 244 (4th Cir. 1968).......................................20
*Crisp v. Duckworth*, 743 F.2d 580 (7th Cir.1984)...................................10
*House v. Balkcom*, 725 F.2d 608 (11th Cir.1984).....................................18
*People v. O'Banner*, 575 N.E.2d 1261, (Ill.App.Ct. 1991).........................13
*Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997).....................................21
*Russell v. State*, 789 S.W.2d 720 (Ark. 1990).........................................20
*Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir.1994)......................................9
*State v. Wells*, 804 S.W.2d 746 (Mo. 1991)...........................................20
*Sullivan v. Fairman*, 819 F.2d 1382 (7th Cir. 1987) .................................20
*Williams v. Ward*, 110 F.3d 1508 (10th Cir. 1997)..................................16
*U.S. v. Debango*, 780 F.2d 81 (D.C. Cir. 1986).......................................10
*U.S. Ex Rel. Cosey v. Wolff*, 727 F.2d 656 (7th Cir.1984).........................10

*Louisiana Constitution*
   Article I
       § 2.............................................................................................22
       § 13........................................................................................5, 22
       § 22...........................................................................................22

*Louisiana Supreme Court*
   *State v. Perkins*, 11-162 (La App 5 Cir 12/28/11); 83 So.3d 250...............25
   *State v. Bruce*, 14-877 (La App 5 Cir 3/25/15);169 So.3d 671
       writ denied, 15-833 )La 3/4/16) 187 So.3d 1007...............................25

*Other Courts*

   *Ex Parte Womack*, 541 So.2d 47, (Ala. 1988).......................................14
   *People v. House*, 566 N.E.2d 259, (Ill. 1990).......................................14

*Other Authorities*
   *American Journal of Criminal Law*, Crime Fantasies,
       46 Am.J.Crim.L.193, Fall 2019.....................................................24
   **ABA Standards for Criminal Justice,**
       Standard 4-4.1...........................................................................11
       Standard 4-3.6...........................................................................11

IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DENNIS MISCHLER,                          NUMBER:_____
        **Petitioner**
VERSUS                                    FILED:_____

TIM HOOPER, WARDEN                        _____
        **Respondent**            DY. CLERK

## MEMORANDUM OF LAW SUPPORTING PETITION UNDER 28 USC SECTION 2254 FOR WRIT OF HABEAS CORPUS:

NOW INTO COURT COMES, DENNIS MISCHLER (Mr. Mischler, Dennis or Petitioner herein) respectfully representing that he is being held in State Custody in violation of the United States Constitution.

### JURISDICTION

This Court is vested with jurisdiction authority pursuant to Title 28 U.S.C. Section 2254 to entertain the cause of action.

### STATEMENT OF THE CASE

The Petitioner, Dennis Mischler, was charged with Bill of Information on September 24, 2014, for two counts of Oral Sexual Battery La. R.S. 14:43.3 and one count of Molestation of a Juvenile La. R.S. 14:81.2(D)(1). On September 25, 2014, Mr. Mischler, entered a plea of not guilty to all charges.

The State amended the Bill of Information on September 26, 2014, adding counts 4-57, Pornography Involving Juveniles under La. R.S. 14:81.1. More than two months

1

later, on December 4, 2014, Mr. Mischler entered a plea of not guilty to the amended Bill of Information.

Jury Trial was set for March 16, 2015; however, multiple continuances pushed the trial date to December 11, 2017. Voir Dire was held on December 11 and 12, 2017 in which a jury was impaneled.

Trial testimony and closing arguments lasted from December 12, 2017 through December 15, 2017. On December 15, 2017 the State rested its case-in-chief. The defense rested after their witnesses testified. The jury instructions were given, the jury deliberated, and the verdict was returned on Dec. 15, 2017. The verdict was as follows: Guilty as Charged to Count 1 and 2–Oral Sexual Battery; Guilty as Charged to Count 3 – Molestation of a Juvenile; Guilty as charged to Counts 3-32 – Possession of Pornography Involving Juveniles Under the Age of 13; Guilty to a responsive verdict on Counts 33-57 of – Possession of Pornography Involving a Juvenile Under the Age of 17. All post trial motions were denied by the Court on Feb. 22, 2018.

Sentencing was held on Feb. 22, 2018, and the Court sentenced Mr. Mischler as follows; Count 1 and 2, Oral Sexual Battery – 10 years at hard labor without benefit of parole, probation or suspension of sentence; Count 3, Molestation of a Juvenile – 15 years at hard labor without parole, probation or suspension of sentence; Counts 4-32, Possession of Pornography Involving Juvenile under the Age of 13 – 40 years at hard labor without benefit of parole, probation or suspension of sentence; Counts 33-57. Possession of Pornography of a Juvenile Under the Age of 17 – 15 years at hard labor

2

without benefit of parole, probation or suspension of sentence. Counts 1-3 were to run concurrent with one another. Counts 4-32 and 33-57 were to run concurrent with one another. Counts 1-3 and Counts 4-57 were to run consecutive. (R.V1 p.38-43) The Court ordered the defendant to register as a sex offender for life. The Defense objected to the excessive sentencing.

On December 3, 2018, an appeal was filed into the First Circuit Court of Appeals presenting three issues for relief. (*Insufficient Evidence, Improper Admission of C.E. Art. 412.2 Evidence and Excessive Sentence*). Mr. Mischler filed a timely supplemental brief presenting an additional Assignment of Error (*Denial of challenge for cause*).

On May 30, 2019 the First Circuit Court of Appeal denied all assignments under docket number 2018-KA-1352. Certiorari was filed to the Louisiana Supreme Court. On Feb. 26, 2020 the La. Supreme Court denied review under Dkt no. 2019-KO-01248. Petitioner received the ruling March 3, 2020.

Mr. Mischler had thirty (90) days to evaluate seeking review in the U.S. Supreme Court. Thus, Mr. Mischler's conviction and sentence became final for reasons of the instant petition, on May 27, 2020.

Two hundred and sixty (260) days later, on February 11, 2021, Mr. Mischler filed an Application for Post Conviction Relief into the Trial Court. In that filing Mr. Mischler presented instances where his trial counsel rendered ineffective assistance and issues surrounding the blanket denial of the Due Process of Law. Mr. Mischler remained tolled and timely until the La. Supreme Court denied him relief on March 7, 2023, under docket

3

number 2022-KH-01361. Mr. Mischler received notification of ruling on March 10, 2023.

Mr. Mischler had one hundred five (105) days remaining for the purposes of AEDPA, or until June 5, 2023, to file his Habeas Corpus into the U.S. District Court, Eastern District of Louisiana. Thus, Mr. Mischler presents the following issues in a timely manner and in accordance with law.

## STATEMENT OF THE FACTS

The facts in the instant case are extensive and can be reviewed from the appellate court ruling at, ***State v. Mischler***, 2019 WL 2334219 (La. App 1 Cir 5/31/19) or in the direct appeal brief attached hereto as Exhibit 1. Mr. Mischler was convicted based upon circumstantial evidence. Not one piece of credible evidence was presented that proved him to be directly involved in any of these crimes.

**THE LOUISIANA COURTS ERRED WHEN FAILING TO GRANT RELIEF REGARDING THE CONSTITUTIONAL CLAIMS RAISED BY MR. MISCHLER:**

Mr. Mischler presented to the Louisiana Courts the following claims:

I.     **DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND THE LOUISIANA CONSTITUTION ARTICLE I § 13:**

II.    **THE LOWER COURTS ERRED WHEN DENYING RELIEF ON THE DENIAL OF DUE PROCESS AND EQUAL PROTECTIONS OF THE LAW ISSUES PRESENTED IN THE APPLICATION FOR POST CONVICTION RELIEF:**

4

## REASON FOR GRANTING RELIEF

## CLAIM NUMBER ONE

**DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND THE LOUISIANA CONSTITUTION ARTICLE I § 13:**

In every aspect of Mr. Mischler's the Trial Counsel failed to hold the State to the adversarial testing mandated by the Constitutions of the United States and the State of Louisiana. Mr. Mischler offers the following in support of his being denied proper assistance of counsel and seeks the appointment of counsel to further develop the claims.

The petitioner was convicted and sentenced in violation of the **Louisiana Constitution of 1974 and the United States Constitution,** in that his attorney did not render reasonably effective assistance of counsel before, during, and after trial. The origin of the right to effective assistance of counsel stems from the Due Process Clause of the Fourteenth Amendment which entitles any defendant to a trial free from fundamental unfairness, including any unfairness which would stem from blatantly incompetent counsel. *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1974). Any person charged with a criminal offense is also entitled by the right to counsel provision of the **Sixth Amendment** to reasonable effective of counsel. The corresponding article in our **Louisiana Constitution of 1974 is Article 1 Section 13.** In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) the court has established a two-prong test for reviewing a defendant's claim that his counsel's performance was so defective that a reversal of his conviction is required. In *Strickland,* the Court held:

5

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel guaranteed by the Sixth Amendment". Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable." Id. 466 U.S. at 687, 104 S.Ct. at 2064.

However, the essence of the inquiry is whether the constitutional error caused the verdict to be unreliable or the proceedings unfair rather than a "mere outcome determination." *Lockhart v. Fretwell*, 113 S.Ct. 838 (1993). Thus, a petitioner must show that the reliability and integrity of the verdict is questionable. A reviewing court is required to assess the possibility that the constitutional violation had an "adverse effect" on the defendant's ability to subject the state's case to meaningful adversarial testing and to present evidence in his favor.

The question of ineffective assistance of counsel is a cumulative one. It is not proper to divide each issue up in an effort to "conquer" it; rather, this court must review the totality of the circumstances and the cumulative effect of counsel's lapses. *See Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)[1].

Additionally, reviewing courts must be educated by the language throughout *Kyles v. Whitley*, 514 US 419, 131 L.Ed.2d 490, 115 S.Ct. 1555, (1995) to look at the case as a whole, to review for omissions or errors of counsel that would undermine confidence in the verdict, and to re-assess the "prejudice" prong of the *Strickland* test in light of the

---

[1] when reviewing counsel's effectiveness, court must look to "all the circumstances" of the trial.

6

"reasonable probability of a reasonable doubt" standard *Kyles* elucidates.

Therefore, the *pro se* claims submitted below must be viewed in their cumulative context, rather than in isolation.

### COUNSEL FAILED TO CONDUCT A PROPER INVESTIGATION TO LEARN FACTS NECESSARY TO PRESENT A FULL AND PROPER DEFENSE AND PRESENT EVIDENCE FAVORABLE TO THE PETITIONER, CONTRARY TO CONSTITUTIONAL PROTECTIONS SET FORTH BY LOUISIANA AND THE UNITED STATES.

Ineffectiveness of counsel is clear if the attorney fails to investigate a plausible line of defense or interview available witnesses. These can hardly be considered strategic choices since counsel by his failure has not obtained the facts upon which such a tactical decision could be reasonably made. *Nealy*, 764 F.2d at 1178; *Proffitt v. Waldron*, 831 F.2d 1245 (5th Cir.1987).

Pre-trial investigation is essential to the effective assistance of counsel. A lawyer must engage in a reasonable amount of pretrial investigation and "at a minimum... interview potential witnesses and... make an independent investigation of the facts and circumstances of the case". *Nealy v. Caban*, 764 F.2d 1173, 1177 (5th Cir.1985).

> ... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Strickland v. Washington*, 466 U.S. 668, 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and, the necessity for investigation increases with the "seriousness of the offense and the gravity of the punishment". *Bryant v. Scott*, 28 F.3d 1411, 1417 (5th Cir.1994).

7

In May of 1984, the United States Supreme Court rendered two significant decisions regarding claims of ineffective assistance of counsel. *Cronic, supra; Strickland, supra.* In *Cronic*, the Court held that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of **Sixth Amendment** right that makes the adversary process itself presumptively unreliable". *Cronic*, 466 U.S. at 659. No specific showing of prejudice is necessary. On the other hand, if counsel made errors but not so serious as to deny the right to counsel altogether, then the reviewing court must determine if prejudice to the defendant resulted. *Strickland.*

Under *Strickland*, prejudice is established if the defendant shows that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome". *Cronic*, 466 U.S., at 694. Assessments of prejudice are necessarily fact-intensive, tied to the peculiar circumstances the individual case. *Nealy*, 764 F.2d at 1179.

In *Baldwin v. Maggio*, 704 F.2d 1325 (5th Cir.1983), the court stated that "essential to the rendition of constitutionally adequate assistance in either the guilt or sentencing phase is a reasonably substantial, independent investigation into the circumstances and the law from which potential defenses may be derived". The court went on to say that a determination of whether an investigation is reasonably adequate, proper, and necessary depends upon a variety of factors including the number of issues in

8

the case, the relative complexity of those issues, the strength of the State's case, and overall strategy of trial counsel. In the instant matter, the strategy of trial counsel apparently was to not present any evidence to rebut the State's case but, simply allow Mr. Mischler to submit to the redundant overabundance of evidence presented by the State.

Rachael Yazbeck was retained by Mr. Mischler to be his advocate and present a defense. Not only did retained counsel fail to present a defense but, counsel's action clearly reflect that counsel failed to be the advocate for her client. Clearly a reasonably adequate and/or proper, investigation was necessary due to the extensive amount of alleged 412.2 witnesses. Yazbeck only called two witnesses to testify. Yazbeck simply went through the motions and never acted as an advocate for Mr. Mischler. Due to the inaction of Yazbeck, Mr. Mischler was clearly sacrificed to the well prepared gladiators representing the State.

In the instant case, the charge was serious enough to require an adequate investigation by the trial attorney prior to making strategic choices. Strategic choices made after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations of an investigation. In other words, counsel had a duty to make reasonable decisions that make particular investigations unnecessary. *Strickland* at 104 S.Ct. 2066. Trial Counsel failed to conduct any meaningful investigation.

Counsel simply failed to conduct any investigation, therefore 'did not choose, strategically or otherwise, to pursue one line of defense over another." *Nealy*, 764 F.2d at

1178[2]; **_Bryant_**, _supra_[3]; **_Profitt_**, _supra_[4]; **_Sanders v. Ratelle_**, 21 F.3d 1446 (9th Cir.1994).

It is well established that an attorney's failure to interview a readily available witness should not be allowed to automatically defend his omissions simply by raising the shield of "trial strategy and tactics". _See_ **_Crisp v. Duckworth_**, 743 F.2d 580, 584 (7th Cir.1984). In this case, counsel failed to investigate witnesses that were readily available. The complete failure to investigate potential witnesses can hardly be considered a tactical decision. **_U.S. v. Debango_**, 780 F.2d 81 (D.C. Cir. 1986). Also see **_U.S. Ex Rel. Cosey v. Wolff_**, 727 F.2d 656, 658 (7th Cir.1984), where it was error for counsel who failed to investigate even one of five potential witnesses.

In **_Vella v. Estelle_**, 708 F.2d 954 (5th Cir.1983), the court stated that "in most cases a single critical error may render counsel's performance constitutionally defective". Surely not obtaining the information from the prior adjudicated allegations rendered counsel's performance constitutionally defective.

Petitioner has already pointed to several errors of counsel which rendered his trial fundamentally unfair but, no error as defective as counsel's failure to investigate matters that are readily available public records such as the Orleans Parish Board of Education investigation, the Courts actions in Mississippi, or the District Attorney's records showing the reasons he dismissed the charges. All of this information should be a matter of public record yet, it was not investigated, reviewed or presented.

In **_Martin vs. Maggio_**, 711 F.2d 1273 (5th Cir.1983), the court stated that because

---

[2]Reversing a murder conviction due to counsel's failure to investigate a viable alibi defense.
[3]failure to investigate alibi defense not a strategic choice but an abdication of responsibility
[4]no strategic justification for abandoning insanity defense

10

the defendant's trial "can be decisively affected by actions of defense counsel in preparing the case, we have insisted that effective counsel conduct a reasonable amount of pre-trial investigation". In the instant matter, it is quite obvious, there was little to no investigation conducted. Counsel had a duty to investigate. **ABA Standards for Criminal Justice, Standard 4-4.1.** This failure of counsel demands that the matter be remanded for a new trial.

I   **Counsel Failed to Investigate Evidence That Someone Else Download or Otherwise Obtained the Pornography**

Perhaps most fundamental to any criminal case is whether the person on trial is the one who actually committed the offense. In fact, a lawyer *must* engage in a reasonable amount of pretrial investigation and "at a minimum . . . make an independent investigation of the facts and circumstances of the case." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985).counsel had a "Duty To Investigate," **ABA Standards for Criminal Justice, Standard 4-4.1.** *See also* SCJ Standard 4-3.6, Acquisition of Physical Evidence.

In the instant case there was sufficient evidence to create reasonable doubt that the crime was committed by one of the many people living in the household. Ample evidence of others having access to his computer should have been presented to the jury to clearly show a reasonable doubt.[5] There were discrepancies in dates of when pornographic media was added to the thumb drives and when the appellant was ill or in the hospital making it impossible for him to have done so. Evidence of the time and duration of Mischler's

---

[5] See attached statements

11

hospital stays, the dates that others were living in his home and had access to his computer, should have been compared to the dates and times the items were purchased on-line.

Trial counsel failed to investigate the computers history, cookies, or cashe files to see if there were hidden files within the computer. Mr. Wayne Labit[6] had made several attempts to obtain a computer investigator to search Mr. Mischler's computer for any type of evidence to prove that this computer was not used to download the illicit files. It always appeared to Mr. Labit that something was wrong in the fact that the State's computer investigators did not even look into Mischler's files. Darlene Smith took Mischler's computer to have it examined by an expert. After the review, the expert issued a report[7] where he confirmed there were no hidden files. One item of note is that even though the report does not specifically state that there were no illegal files on the computer, it is required that, if found, they must be reported. The mere absence of this information is confirmation that no such files existed on his computer.

There was one theme that rang consistent throughout the testimony, many, many people had access to Mr. Mischler's home. For example, Josh Snyder testified that they would routinely go over to Mr. Mischler's house. He also testified that not just him but there were other kids that would hang out over there. All my siblings and the neighbors. (R. p. 609). Any one of these people could have download the child pornography.

Amber Giordano testified about everyone having access to the computer. (R. p.

_____
[6]See attached signed statement.
[7]See attached.

1061). Josh Snyder testified everyone had access to Mischler's lap top. (R. V3 p. 632). it should also be noted that this would not be the first time Mr. Mischler would complain about people using his computer to conduct improper activities. Further, William Giordano testified that he had access to Mischler's computer which was not password protected.(R. V4 p. 821).

Further investigation should have been done to locate the items that were purchased by the District Attorney's Office and presented in evidence. There were items alleged to have been purchased that were never found during the search of the Mischler residence. This tends to support Mischler's assertion that it was one of the people that were living in his home that was the real purchaser as they would have taken the missing items with them instead of leaving them in Mr. Mischler's home.

Mischler testified that his computer had been used to purchase unauthorized items and that he had lodged a complaint about it. He further testified that his attorney had these records. (R.p. 847). Even though counsel was alleged to be in possession of these records, she failed to present them to the jury. These records would have offered proof that the computers were accessible by everyone in contrast to the testimony presented by the 412.2 crew. Further it would have offered the jury a reasonable doubt as to Mischler's culpability.

It is clear that counsel was ineffective for failing to investigate one the most obvious and significant defense. *People v. O'Banner,* 575 N.E.2d 1261, (Ill.App.Ct. 1991)[8]. Even though counsel may have felt that it would not be simple to secure

[8]counsel ineffective [. . .] failing to call the defendant and her son to present exculpatory

13

admissible evidence of innocence, there was no excuse for failing to pursue it. *Ex Parte Womack*, 541 So.2d 47, (Ala. 1988);[9] *People v. House*, 566 N.E.2d 259, (Ill. 1990).[10] Clearly counsel failed in her Sixth Amendment duty to offer reasonably effective assistance of counsel.

## II    Counsel Failed to Investigate and Find Witnesses Who Could Have Presented Evidence on Behalf of the Defense

In addition to failing to resolve a clear defense in the case, counsel failed to investigate and secure witnesses of critical importance to the defense. Mr. Mischler has attached several statements from people who wanted to testify but were not called. Due to the extensive amount of alleged 412.2 witnesses it was imperative that trial counsel procure witnesses in support of the defense. By not interviewing many of the witnesses, counsel failed in her Sixth Amendment duty to properly prepare for trial.

Counseled failed to call Chris Bellone[11] or any of the other fifteen staffers to rebut the testimony of S. L. These potential witnesses had been present at the original hearing in the Mississippi. They would have offered substantial testimony to contradict the false allegations of S. L. Yet, they were not interviewed or called to testify nor was any investigation done into their testimony in the Mississippi proceedings. Counsel failed

---

testimony that it was the son and not the defendant who shot the defendants husband and that the defendant only lied to the police to protect her son

[9]counsel ineffective where he failed to investigate another attorneys statement that he had exculpatory information that was protected by attorney-client privilege; investigation would have revealed that the attorney had a letter from one of the states key witnesses in which the witness admitted that he committed the crime and also had a transcript of a meeting between the District Attorney and the witness wherein the witness recanted the grand jury testimony in which he implicated the defendant

[10]counsel ineffective for failing to call nurses to testify which would have shown that the "dying declaration" of the victim which described the assailants in a manner exculpatory to the defendant

[11]Mr. Bellone passed away shortly after the trial without ever being interviewed

14

even to produce the records of this incident showing the charges had been dismissed. Even the State recognized the ineffectiveness of defense attorney Rachael Yazbeck. The District Attorney asked "Anybody tell you they could have issued a subpoena to help support your defense?" (Tr.P.976).

Counsel further rendered ineffective assistance when she failed to call Donald Batiste to rebut the testimony of R. L. Mr. Batiste was the principal at the school where R. L. alleged these incidents occurred. Due to the passing of Mr. Batiste[12] counsels failure to act will cause prejudice to Mr. Mischler forever as he can never obtain the testimony of this witness. If Counsel would have completed even the simplest of investigations, she would have obtained the original statements of the witnesses during this proceeding, but she did not make any attempt to investigate this matter, causing severe prejudice to Mr. Mischler.

Counsel rendered ineffective assistance again when she failed again to obtain a copy of the investigation completed by the Orleans Parish Board of Education that clearly showed the allegations simply could not have happened as they were alleged. In this instance Trial Counsel failed to obtain and present the findings from the Orleans Parish District Attorney's office as to why they did not proceed with the prosecution. All of this information was a matter of public record, yet it was not investigated, obtained or presented. These simple reports should have been used to rebut the testimony of R. L. Counsel completely failed to hold the State's case to the adversarial testing envisioned by the Constitutions of both Louisiana and the United States.

---

[12]Since the trial, Mr. Batiste has died and can no longer provide this testimony.

In a case such as this, with an over abundance of 412.2 witnesses, counsel had a duty to investigate each one and, when available, offer rebuttal testimony for the jury. Counsel failed to interview any number of witnesses who testified about the matters previously alleged by S.L, R.L. and G.W. This testimony would have assisted the jury to understand the adjudicated facts behind each of these false allegations. Instead, Counsel simply allowed these matter to be presented to the jury as fact. Clearly counsel failed in her duty to hold the State's case to an adversarial testing as required by the **Sixth Amendment** when she failed to conduct a proper and thorough pre-trial investigation.

It is clear that counsel was ineffective for failing to investigate this evidence. "The decision to interview a potential witness is not a decision related to trial strategy. Rather, it is a decision related to adequate preparation for trial." *Chambers v. Armontrout*, 907 F.2d 825, 828, (8th Cir. 1990) (en banc); *Williams v. Ward*, 110 F.3d 1508 (10th Cir. 1997)[13]. Counsel's failure to interview witnesses and present them to the jury constitutes a violation of Mr. Mischler's rights to the Due Process of Law and the Effective Assistance of Counsel.

Mr. Mischler told his attorney, Rachael Yazbeck, on numerous occasions, that efforts needed to be made to obtain evidence to assist in his defense. She was told about numerous witnesses that needed to testify to give the jury a fair presentation.

Witnesses such as Scott Williams who would have offered testimony[14] about the motivations of several of the 412.2 witnesses. This testimony would have shown that he

---

[13]counsel failed to present evidence that another person turned himself in to police and confessed to this crime while defendant was in custody
[14]See attached signed statement.

16

too had lived with the petitioner and often visited the house, never experienced, or witnessed, any of this alleged sexual activity. He would also have testified how they (412.2 witnesses) had teamed up against Mr. Mischler in an all out assault. Mr. Williams could have testified about how these witnesses robbed, stole and generally just took advantage of Mr. Mischler. He would have testified that Dennis Mischler was always good to everyone that needed assistance, male, female, young, or old it didn't matter, if you were in need, Dennis would help you, no questions asked.

Most of the 412.2 witnesses worked together to protect each other because they knew if they did not help convict Dennis of these charges, the State would next target them. They are the ones who use Dennis' computer to download illicit videos. This is the reason all the items could not be found. They simply used Dennis as a place to keep the items they were not using. A terrible injustice has been done to Dennis Mischler due directly to counsels failure to investigate.

Another witness that would have testified was Dianna Perval. She would have told the jury[15] about the false testimony being presented by several of the 412.2 witnesses about their having access to the house and the computer. She would have also testified that there had been several occurrences of improper on-line purchases made from Dennis Mischler's computer by these same witnesses. Finally she would have testified about possible motivations of many of these witnesses. Trial counsel's failure to investigate denied the jury the opportunity to consider that these same State witnesses had already been caught making unbeknownst illicit purchases on Dennis' computer. Surely, Due

---

[15]See attached signed statement.

Process mandated the jury hear this testimony.

Edward Smith actually lived in the house with Mr. Mischler. He would have testified[16] that many of the State's 412.2 witnesses had taken advantage of Dennis on a multitude of occasions. He would have also testified that many of these same witnesses had unlimited access to Mr. Mischler's home, computer, and how they stole from him on every occasion. Even with this, Dennis still took care of anyone that needed help.

Robert Williams, Jr. would have also testified[17] about Mr. Mischler's failing health and how many of the 412.2 witnesses were taking advantage of the situation. He would have further testified that everyone had unlimited access to the house, the computers, the pool, and anything else around the property. He also would have testified that he Dennis Mischler was his uncle and he never experienced any type of sexual advance or innuendo during his life with Dennis.

This information was so obviously needed to prepare his defense that counsels failure to obtain it caused a denial to a meaningful adversarial testing required by the **Sixth Amendment** of the Constitution. Counsel failed to present any of that evidence or any of those witnesses to defend against the allegations. Although it is not required that a lawyer be a private investigator in order to discern every possible avenue which may affect the client, counsel must make an effort to investigate the obvious. *House v. Balkcom*, 725 F.2d 608 (11th Cir.1984). The record from the previous allegations should have been obvious to counsel and presented to the jury.

---

[16]See attached signed statement.
[17]See attached signed statement.

18

In this case, counsel failed to insure that a proper investigation take place because she failed to conduct any investigation at all. It is clear that counsel was ineffective for failing to investigate this evidence.

**III      The Defense Counsel Failed to Investigate and Find Evidence to Contradict State Witnesses at Trial**

There was a large amount of evidence that was available to impeach the state's witness's, yet defense counsel failed to investigate and find this evidence, let alone use it at trial.

Most people can remember exactly where they were at the time of the Kennedy Assassination, Space Shuttle explosion, or the Twin Towers falling. Most instances that have a traumatic affect on our lives have that kind of impact on our brains. In the instant matter J.S. cannot remember how it happened but he remembers the exact day, who was with him, Jay McKinnon, that they went to movies and stuff, that his friend went to the store on his bicycle, that it was in a FEMA trailer, remembers the exact location of the FEMA trailer, Lemont Street off of Almonaster, he recalls that it was dusk,[18] where they had been, the alleged assault stopped when his friend returned from the store, and that it was against his will, but he can't remember if it was in the front of the trailer, in the back of the trailer, whether they were standing or sitting he simply alleges that it happened[19].

Counsel failed to investigate or even interview Jay McKinnon to learn his version of the events. According to the testimony of J.S., Dennis Mischler had picked up he and McKinnon and they had went to the "movies and stuff", then went to the FEMA trailer

_____

[18]R.p. 625
[19]R.p. 615-616

19

where they arrived at "dusk". At near dark, McKinnon was alleged to have rode a bike to the store and back while these alleged events took place. Trial counsel failed to interview this witnesses even though the testimony of J.S was so incredible as to be near unbelievable. McKinnon was the only other witness that could have offered any testimony to aid in the defense of these incredible allegations, yet, counsel failed to even talk to McKinnon. Is this the effective assistance of counsel envisioned by the Sixth Amendment? Dennis Mischler says no!

Jay McKinnon should have been a common sense witness but it becomes obvious in the overview of trial counsel's assistance, that Rachael Yazbeck failed to apply any common sense to the defense of Dennis Mischler. Mr. Mischler has made multiple attempts to locate Mr. McKinnon but due to the restrictions currently being applied to him, it has been impossible.

It is clear that counsel was ineffective for failing to investigate this evidence. *Coles v. Peyton*, 389 F.2d 244 (4th Cir. 1968)[20]; *Sullivan v. Fairman*, 819 F.2d 1382, 1391-92 (7th Cir. 1987)[21]; *Russell v. State*, 789 S.W.2d 720 (Ark. 1990)[22]; *State v. Wells*, 804 S.W.2d 746 (Mo. 1991)[23]; *Bonner v. State*, 765 S.W.2d 286 (Mo. App. 1988)[24].

---

[20] no investigation of prosecutrix's character or search for potential witnesses
[21] ineffective assistance when counsel failed to contact witnesses whose names, addresses, and telephone numbers were in police reports and whose testimony directly contradicted governments witness
[22] counsel ineffective in murder case for failing to interview and call witnesses suggested by the defendant who would have impeached the state's primary witness who claimed he saw the defendant commit the murder by essentially showing that it was the witness who had the motive to commit the murder
[23] counsel ineffective for failing to obtain a letter by a state witness to the defendant which stated she knew the defendant was innocent and another state witness had committed the murder
[24] counsel ineffective for failing to impeach a state witness after he denied prior convictions when counsel knew of priors from defendant but did not conduct discovery to obtain documentation

**IV**    **Counsel Developed No Meaningful Relationship With Mischler and Was Therefore Not Able to Establish Sufficient Trust to Learn Information Critical to   the Defense**

Counsel did not establish a relationship of trust or advocacy with Mr. Mischler, and was therefore in no position either to learn information critical to the defense, or to discuss the wisest course of action in his own defense. The counsel that represented Mr. Mischler never established a working relationship with him . . . period. She was always "too busy" to meet with him to discuss possible avenues of defense. When witnesses from the 412.2 crew testified, Mischler tried to tell her what was the truth, what was an outright lie, and what was a distortion of the truth. Each time counsel instructed him to wait to discuss these matters. At the end of the testimony Mischler would attempt to have these conversations but again was told to wait. At the end of the day Rachael Yazbeck told him she did not have the time to discuss anything with him and they would talk tomorrow. In this case, as in life, tomorrow never comes.

The questions that beg to be answered here are, how could any type of effective defense be considered if there was no communication between the attorney and client, and without this communication, how could any type of effective defense be prepared? Mr. Mischler notified her of several witnesses that could have been called, records that could have been obtained, and even provided my personal records, all, that would support my defense. Rachael Yazbeck failed to use any of this defense evidence and show contempt for the wishes of Mr. Mischler.

The inaction of Rachel Yazbeck made it impossible for counsel to provide

21

effective assistance of counsel. In *Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997), the court presumed prejudice because counsel did not serve as advocate and showed contempt for his client such that he was a "second prosecutor" and defendant would have been "better off to have been merely denied counsel".

## *ACCUMULATION OF INEFFECTIVE ASSISTANCE OF COUNSEL*

In assessing the prejudice resulting from counsel's deficient performance the reviewing court may not simply review every claimed error individually to determine whether it alone prejudiced the defense. Rather, the court must assess prejudice on the basis of cumulative effect of counsel's errors on the fairness of the trial. *See Kyles v. Whitley*, 115 S.Ct 1555, 1567 (1995)[25].

Clearly trial counsel failed to conduct any reasonable investigation into the matter. With the State's presentation of the 412.2 crew it was imperative that witnesses be presented to dispute their testimony or testify as to the motivations of these witnesses.

It is clear that Mr. Mischler has been denied the assistance of counsel assured every citizen through the constitutional provisions of the **Fourteenth** and **Sixth Amendment** of the United States Constitution as well as **Article I §§ 2, 13, 22** of the Louisiana Constitution. Mr. Mischler seeks an evidentiary hearing, with the assistance of counsel, and an Investigator, to perfect the record on the claims presented herein. Counsel's failure were so egregious as to deny Mr. Mischler of his Constitutional protections..

---

[25]evidence that government failed to disclose is considered collectively, not item-by-item, in determining whether the "materiality" requirement of *Brady* violation has been satisfied

22

The "representation of a criminal defendant entails certain basic duties. Among those duties include the duty of loyalty, the duty to advocate the defendant's cause, duties to consult with the defendant on important decisions, and to keep the defendant informed of important developments in the course of the prosecution, and a duty to bring to bear such skill and knowledge as will render the trail a reliable adversary testing process". *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed.2d 158 (1932).

When a true adversarial criminal trial has been conducted -- even if defense counsel may have made demonstrable errors -- the kind of testing envisioned by the **Sixth Amendment** has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. As Judge Wyzanske has written: "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators". *Cronic*, 466 U.S. at 656-657. Trial Counsel in the instant matter clearly sacrificed Mr. Mischler to the State. The conviction and sentence should be vacated and a new, fair, impartial and constitutional trial ordered.

### CLAIM NUMBER TWO

**MR. MISCHLER HAS BEEN DENIED THE BASIC PRINCIPLES OF THE LAW WHERE HE HAS BEEN DENIED DUE PROCESS, THE RIGHT TO PRESENT A DEFENSE, THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AND THE OVERALL DUE PROCESS AND EQUAL PROTECTIONS OF LAW CONTRARY TO CONSTITUTIONAL PROTECTIONS OF LOUISIANA AND THE UNITED STATES.**

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he

23

is charged. *Duncan v. Louisiana*, 391 U.S. 145 (05/20/68), *In re Winship*, 397 U.S. 358 (3/31/70). Mr. Mischler was convicted on less than sufficient evidence to prove each element of the crimes charged but due to the types of charges, justice does not apply..

"Throughout American history the public has been gripped by fantasies of criminal activity. These crime fantasies manifest in two distinct but related typologies: *witch-hunts* and *crime panics*. One the one hand, witch hunts target individuals based on their beliefs and are exemplified by the two Red Scares of the early and mid-twentieth century and the persecution of the Quakers in seventeenth century Massachusetts Bay. These are fundamentally distinct from crime panics, which target activity that was already classified as criminal but do so in a way that exacerbate deep procedural deficiencies in the justice system. Crime panics are exemplified by the Salem Witchcraft trials and the "Satanic Panic" of the 1980s and 1990s." *American Journal of Criminal Law*, Crime Fantasies, 46 Am. J. Crim. L. 193, 194, Fall 2019. Mr. Mischler fall into a new classification of crime panics, sexual related offenses. No due process, no evidence, simply get someone to allege that he is a witch, I mean sexual offender, and therefore he is guilty.

Due to the protections of the **First Amendment**, Witch hunts are less likely to occur in America. In contrast, crime panics criminalize behavior that society wants criminalized but rely on processes that undermine individual rights and Due Process. These crime panics focus on existing criminal activity but with a zeal that exacerbates weak points in the criminal law system. This causes unjust trials, overly harsh punishments and wrongful convictions.

24

Mr. Mischler has been denied any semblance of the due process envisioned by our forefathers in the writing of our Constitution. Even though sex offense crimes go way beyond our moral code. The law still makes efforts to appear fair and just but, in reality, the accused sex offender is guilty as soon as he is accused. The presumption of innocence is a basic component of a fair trial within our system of justice.

In the instant case, the right to innocence until proven guilty, the right to the assistance of counsel, the right to a fair and impartial hearing and the right to simple due process and equal protection, all, were set aside to convict and prove our moral superiority. America was built in an effort to escape tyranny from government. The instant case, it would sadden the men and women who built this country to see that it has fallen back under a tyrannical system.

During the Salem witch trials it only took a simple allegation for a single person to be declared a witch. Today the exact same type of evidence was used to convict Mr. Mischler of being a sex offender.[26] Sex offenders don't enjoy the same constitutional protections as every other American. Dennis Mischler is a good man that has been burned at the sex offender stake, without the due process of law. The witch hunts are back, under the guise of crime panics. Today it is not witches, communist, Muslims, or the Japanese, its sex offenders. Burn em at the stake!

Internment of the Japanese during WWII, the Red Scares of Communism of the 1940s & 1950s, Quaker hunting in Colonial Massachusetts, and the Salem witch trials,

---

[26] *State v. Perkins*, 11-162 (La App 5 Cir 12/28/11); 83 So.3d 250; *State v. Bruce*, 14-877 (La App 5 Cir 3/25/15);169 So.3d 671 *writ denied*, 15-833 )La 3/4/16) 187 So.3d 1007

are all examples where we allowed fear to dominate our common sense. Today its sex offenders that have caused us to lose our focus. Because of this unreliable thought process, Mr. Mischler has been convicted of crimes based on allegations, fear and innuendo. He was sentenced to spend the rest of his natural life imprisoned, through an unfair and unjust process, because of this fear. The Due Process Clause of the Constitution is supposed to protect men like Mr. Mischler from these types of unfair crime panic prosecutions. It does not seem to matter if the correct person is convicted, as long as someone is sent to prison. In the instant matter the process has clearly failed.

The Constitution requires that every fact be proven beyond a reasonable doubt. That is unless you are accused as a communist, witch, Quaker, Muslim, or, like Mr. Mischler, a sex offender. In sex offense cases, as in witch hunts, all that is needed is single someone to say you did the crime. No matter how unreasonable the allegation, if you are accused, you are guilty. Mr. Mischler argues that we should learn from our past mistakes. In America today, in support of this crime panic, sex offenders are treated more harshly than murders, even terrorist are treated better than accused sex offenders. The current crime panic attributed to sex offenders led to the introduction of unreliable speculative evidence that Mr. Mischler was the actual person that committed these crimes. Similarly, severe evidentiary flaws persisted throughout the trial that contributed to the unconstitutional conviction of Mr. Mischler.

### *He Say, She Say, Permissible Evidence*

In the instant matter the accuser could not remember anything about the actual

alleged incident other than it happened. He remembered the FEMA trailer, the full name of the person who was with him, that his friend went to the store on a bicycle, that it was around dusk, but he can't remember if he was standing, sitting, or laying down during the incident. The only evidence presented to show Mr. Mischler's guilt of oral sexual battery and molestation was the incredible testimony of this one witness, who is a known liar, has a criminal history and has committed multiple crimes against Mr. Mischler. But, because of the crime panic surrounding sex offenders, this incredible testimony was not only allowable it was encouraged.

In the case of sexual offenses, the testimony of this witness alone was sufficient to establish the elements of the sexual offense, even where the State did not include medical, scientific or physical evidence to prove the commission of the crime. *State v. Roca*, 03-1076 pp. 11-12 (La. App 5 Cir 1/13/04), 866 So.2d 867, *writ denied*, 04-0583 (La. 7/2/04), 877 So.2d 143. This testimony contributed to the unconstitutional conviction of Mr. Mischler and this unjust adjudication, in the interest of justice, must be vacated.

## *Confusion of the Facts, Permissible Under The Law*

Further evidence that Mr. Mischler is the victim of the crime panic against sex offenders is the method in which the law has been changed to lesson the burden on the State to prove the claims. Mr. Mischler has been denied the Due Process of the Law simply because he is the victim of the sex offender crime panic sweeping America.

In an effort to appease the crime panic, in 2001, the Louisiana legislature created a law that made it permissible to submit evidence of other crimes, wrongs or acts if it was a

sex offense. Article 412.2 requires a less stringent similarity requirement than La. C.E. 404(B) specifically for sex offenses. This Rule resulting from the crime panic as no other crime allows for this type of lessened evidentiary rule.

In the instant case the State paraded a whole crew of Article 412.2 witnesses. Most of the 412.2 crew was a single group of friends. This group of friends who Mr. Mischler had tried to help on numerous occasions, had robbed and stole from him, had used his computer to purchase items from the internet, and had broken into his home many times. This group of friends all testified about unsubstantiated contradictory allegations and unprovable assertions to support that Mr. Mischler was a bad man. None gave testimony which actually supported even a single fact of the instant matter, not a single element of the charges were presented. These witnesses were presented for the sole purpose of discrediting Mr. Mischler. Due to the crime panic, only in cases like these, is this kind of testimony allowed. Some of the testimony was just ludicrous and this entire parade of witnesses simply served to confuse the jury as to the facts in the instant matter.

S.L. testified to allegations he made against Dennis Mischler in Mississippi. S.L. testified that he had accused Dennis of touching him but later dropped the charges.[27] The fact is that the charges were dropped by the State of Mississippi for a lack of credible evidence, for being unbelievable. Mr. Mischler tried to obtain the documentation to prove this but the Clerk of Court stated that due to Hurricane Katrina the records were no longer available.[28] None of S.L.'s testimony gave support to the current allegations and served

[27] R.p 636
[28] See attached statement.

28

only to prejudice the finder of fact and lower the State's burden of proof by playing on the jurors fears from the crime panic related to sex offenders..

A.E., another member of the 412.2 crew, testified that Dennis had come in the bathroom while he was taking a bath and asked if he needed help taking a bath. A.E. testified that he was "six or seven" at the time and did ask for help. He testified that Dennis washed his "private area" and then left. He even testified that he did not think anything about it.[29] He did not think anything of it until the "investigation was going on. It all kind of clicked in my head."[30] that these actions could be conceived as being nefarious. How many parents have assisted their children to wash their "private area"? Should all parents be prosecuted for teaching their children how to bathe? This is the kind of evidence that is allowed due to the crime panic. Again this testimony had no evidentiary value as related to the current allegations and was only presented to confuse the fact finders and caused unnecessary prejudice to the petitioner.

A.P. was the next member of the 412.2 crew to testify. A.P. testified to the horrific act by Dennis Mischler of walking back and forth outside the bathroom door while he took a shower. There were even times when Dennis Mischler went so far as to bring him a towel when he needed it.[31] This witness further testified that Dennis would hug him and rub his leg when they would say good bye[32], how horrific! The District attorney offered most of the testimony for this witness. A.P. was testifying about they were wearing gym

---

[29]R.p 657
[30]R.p 658
[31]R.p 666
[32]R.p 668

29

shorts, when the DA testifies that "prior to doing that, he's performed oral sex on you?"[33] Never had A.P. given any testimony about anyone performing oral sex on him. But the DA went on testifying that "he's performing oral sex on you, and at some point, he pulled his pants down?" "And had you engage in anal sex with him?"[34] This witness had never testified to any of these assertions. He only agreed with the DA that this stuff had occurred. The district attorney was allowed to testify, without objection from the trial counsel due to her fear of the crime panic. Again this kind of evidence was allowed and had absolutely no evidentiary value to the instant allegations and was offered for the sole purpose of confusing the fact finders, caused unnecessary severe prejudice to the petitioner, and sparked the fear of the jurors.

W.G. was the next member of the 412.2 crew to testify. This witnesses testimony contradicted all others where he testified that the desktop computer was password protected.[35] All the other witnesses testified that the desktop computer was open to everyone. This should have been the first question of credibility but due to the crime panic, this was not even a concern.

W.G. goes on with the incredible testimony that when he was sixteen he and Dennis had a sexual relationship involving anal and oral sex. There was so much inconsistent testimony from this witness but none more blatant than on direct examination. W.G. testified that after the card game he watched Dennis and Anthony

---

[33]R.p 670
[34]R.p 671
[35]R.p 683

30

having anal sex.[36] But, on cross examination the story changed to after the card game he watched Anthony perform oral sex on Dennis.[37] This witnesses testimony was so filled with contradictions as to be incredible. Again, due to the crime panic, the testimony alone, no matter how incredible, how unreliable, was sufficient to support the allegations and spark the fear of the fact finders.

## Burden of Proof

Further due process violations come into play under Louisiana law that shifts the burden of proof to the petitioner. The Louisiana Code of Criminal Procedure, **Article 930.2** reads *"The petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted."* This burden shift is clearly unconstitutional under the U. S. Constitution.

The Louisiana Supreme Court held in **State ex rel Johnson v. Maggio**, 440 So.2d 1336 (La. 1983) that a *pro se* petitioner "is not to be denied access to the courts for review of his case on the merits by overzealous application of form and pleading requirements or hyper-technical interpretations of court rules. *See also* La. Const. Art I § 22; **Gibbs v. La. Dept. Of Public Safety and Corr.**, 999 So.2d 1137 (La 2009); **Carter v. Cain**, 753 So.2d. 225 (La. 2000): **Smith v. Terrell**, 699 So.2d 74 (La 1997); and **Smith v. Cajun Insul.**, 392 So.2d 398 (La. 1980); **Haines v. Kerner**, 404 US 519, 520, 92 S.Ct 594, 596, 30 L.Ed.2d 652 (1972)(Court holds pro se filings to "less stringent standard than formal pleadings filed by lawyers"); **Johnson v. Quarterman**, 479 F.3d. 358, 359

---

[36] R. p 690
[37] R. p 697

31

(5th Cir 2007)("Briefs by pro se litigants are afforded liberal construction"); *see also*, **McNeil v. United States**, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (acknowledging that the Supreme Court has "insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed"); See **Guidroz v. Lynaugh**, 852 F.2d 832 (5th Cir 1988); **Bounds v. Smith**, 430 U.S. 817, 97 S.Ct 1491, 52 L.Ed.2d 72 (1977). But the reality is that, *pro se* incarcerated persons, more frequently than not, are denied relief based upon their lack of knowledge of the law. The legal system holds that a *pro se* petitioner does not have to cite any law, simply state the nature of the claim, yet, courts regularly deny a *pro se* petitioner based upon his offering no legal authority to support the claim.

Dennis Mischler is a good man that has fallen victim to a system of justice that has forgotten about the tyranny it was created to escape. The sex offender crime panic is sweeping our nation and the world. This crime panic causes good men like Mr. Mischler to be imprisoned for the rest of his life based upon innuendo and accusations, no actual proof is needed. It is time to end this injustice and reverse, vacate, and dismiss these charges against Mr. Mischler.

*SUMMATION*

Petitioner comes before this Court as a *pro se* litigant. He is unlearned in the field of law and prays this Court will give his petition a liberal review. Mr. Mischler is an elderly man who is living in a medical dormitory due to his health. The law required that Mr. Mischler learn in one year what lawyers take six years to learn. With minimal access

32

to the Law Library he has tried to understand the complexities of the law. This is a heavy burden placed on him but he has tried his very best.

Mr. Mischler presents to this Court issues of his denial of the Due Process of Law. He is incarcerated at the Louisiana State Penitentiary and has no access to public records or an investigator. He has read enough to understand that the burden to prove his claims are his burden to bare. Mischler would ask this court, Isn't that a denial of the Due Process? How can Mischler obtain statements from various witnesses that would offer the proof to show the unfairness of this prosecution when the State law forbids him access to public records, prison regulations limit who he may call to only a few people, does not allow him access to the internet where he could use various search engines to locate the various witnesses and other evidence? Mischler has even been unable to get his trial attorney to respond to his multiple request for his trial records. Is this in itself not a denial of the due process of law?

The law is clear that to meet the level required by the **Sixth Amendment's** right to the assistance of counsel, a reasonable amount of pre-trial investigation must be carried out. Now, Mischler comes before this Court arguing that his counsel failed to meet this standard but in order to prove prejudice, he must do the investigation and show what was missed. The question to this Court is how can he do that when he is incarcerated without access to the very information he needs. To coin and old phrase, it is a Catch-22 situation. He is required to show the proof but he is legally restricted from the proof.

Mr. Mischler is a *pro se* petitioner who has absolutely no experience with criminal

33

law. He is a victim of an overall evolutionary system of law that denies him of even the basic concepts of ordered liberty. In the instant matter Mr. Mischler was tried and convicted for crimes based upon the hysteria of the sex offender crime panic sweeping our country. Charges have been made, usually without an accompanying scintilla of evidence, that "hysteria" rules the country [] because of the witch hunters. *Uphaus v. Wyman*, 360 U.S 72, 79 S.Ct 1040

The State law has been changed to make it very simple for the State to obtain a conviction and very difficult to prove the conviction is in error. Laws such as Article 930.2 shifting the burden of proof to uneducated pro se petitioner, the state restrictions on these same petitioners denying them access to public records, and the allowance, under Article 412.2 of the parading of numerous witnesses who testified to speculative evidence at best, and the retrying of crimes already adjudicated under the guise of the parameters of Art. 412.2, clearly have denied Mr. Mischler of any semblance of due process or equal protection of the law. The motives behind state laws such as these may have been good. But history indicates that urges to do good have led to the burning of books and even to the burning of witches. No rationalization on a purely legal level can conceal the fact that state laws like this one present a constant overhanging threat to freedom. *Beauharnais v. People of State of Illinois*, 343 U.S 250, 72 S.Ct 725. Mr. Mischler never had a chance at justice. Between the aforementioned laws, the crime panic surrounding sex offenders, and the sacrifice of him to the gladiators of the state by his trial counsel, Dennis Mischler was considered guilty the day he was charged and the trial was simply a criminal facade to the

34

precepts of justice.

**Due to the crime panic related to sex offenders how will we be judged in the future? Will we be called witch hunters, or worse? Mr. Mischler prays that this Court will reverse this miscarriage of justice, vacate the injustice of this conviction and order a new trial.**

Mr. Mischler ask this Honorable Court to review these claims in their entirety. Mr. Mischler is confident that once the review is thoroughly reviewed this Honorable Court will agree that he was denied justice.

## CONCLUSION

Mr. Mischler has made a prima facie case, that he is deserving of relief from his unconstitutional imprisonment and that the State Courts have erroneously denied relief.

**THEREFORE,** petitioner prays that, the Court, after due consideration, will, in the interest of justice, grant him relief. In the alternative, petitioner would ask that the matter be remanded for further review.

Respectfully Submitted,

*Dennis Mischler*

Dennis Mischler 731698

35

## CERTIFICATE OF SERVICE AND VERIFICATION

I, Dennis Mischler, am an offender confined in an institution. I verify that the foregoing pleading is true and correct to the best of my knowledge and belief, under penalty of perjury.

Today, the _16th_ day of March, 2023, I am placing this filing in the institution's internal mailing system in accordance with institutional policy for electronic filing to the Court via the Legal Programs Dept..

I further certify that a true and correct copy of the foregoing has this day been served upon the district attorney in and for the Parish of St. Tammany, State of Louisiana, by placing a copy of the same in the hands of prison officials for delivery via U.S. Mail, postage prepaid, on this _16th_ day of March, 2023.

Respectfully Submitted,

Dennis Mischler

Dennis Mischler, 731698
Louisiana State Penitentiary
Angola Louisiana 70712

36