**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DENNIS MISCHLER                                    CIVIL ACTION

VERSUS                                             NO. 23-990

TIM HOOPER, WARDEN                                 SECTION: "I"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Dennis Mischler, is a convicted inmate housed at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.    In 2014, he was charged by bill of information with two counts of oral sexual battery and one count of molestation of a juvenile (J.S.), and multiple counts of possession of pornography involving juveniles (counts four through fifty-seven).[1]    The latter charges were subsequently amended to allege more specifically

---

[1]  ECF No. 10-1 at 69, 82, Initial and Amended Felony Bill of Information, Parish of St.

possession of pornography involving juveniles under the age of 13.    Following a jury trial held December 11-15, 2017, he was found guilty as charged on the first 32 counts.    He was found guilty on the last 25 counts of the lesser-included offense of possession of pornography involving juveniles under the age of 17.[2]    His motion for post-verdict judgment of acquittal and motion for new trial were denied.    The trial court sentenced him to 10 years' imprisonment on each count of oral sexual battery and 15 years' imprisonment for molestation of a juvenile, all to be served without the benefit of probation, parole or suspension of sentence, and to run concurrently.    The trial court imposed a sentence of 40 years imprisonment for each of the 29 counts of possession of pornography involving juveniles under 13 years of age and 15 years' imprisonment for each of the 25 counts of possession of pornography involving juveniles under 17.    The sentences for possession of pornography were ordered to be served without benefit of probation, parole or suspension of sentence and to run concurrently to each other, but consecutively to the sentences on the first three counts.[3]

On direct appeal, Mischler asserted three counseled assignments of error:    (1) the trial court erred in allowing admission of "lustful disposition" evidence; (2) there was

_____

Tammany.    The State submitted the record electronically in twelve volumes. ECF No. 10, Notice of Lodging of State Court Record Materials.

[2]   ECF No. 10-1 at 53, Minute Entry, 12/15/17.

[3]   ECF No. 10-1 at 61, Minute Entry, 2/22/18; ECF No. 10-5, Sentencing Transcript at 237-39.

insufficient evidence to support the convictions; and (3) his sentence was excessive.    He also filed a *pro se* brief arguing that he was denied due process when the trial court erroneously denied his challenge for cause of a venire member, and he had to use a peremptory challenge.    On May 31, 2019, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[4]    On February 26, 2020, the Louisiana Supreme Court denied his counseled and *pro se* applications for writ of certiorari.[5]

On or about February 11, 2021, Mischler submitted an application for post-conviction relief to the state district court and asserted two grounds for relief:    (1) he received constitutionally ineffective assistance of trial counsel because counsel failed to perform a proper investigation necessary to present a full and proper defense and present evidence favorable to petitioner; and (2) he was denied the basic principles of law where he was denied the right to present a defense, the right to effective assistance of counsel, and the overall due process and equal protections of the state and federal constitutions.[6]    His first claim that counsel rendered ineffective assistance included five subparts, including that counsel (1) failed to investigate evidence that someone else downloaded or otherwise

---

[4]   *State v. Mischler*, 18-KA-1352, 2019 WL 2334219 (La. App. 1 Cir. 5/31/19); ECF No. 10-8 at 25.

[5]   *State v. Mischler*, 2019-K-01100 (La. 2020), 347 So.3d 875 (ECF No. 10-8); *State v. Mischler*, 2019-KO-01248 (La. 2020), 347 So.3d 880 (ECF No. 10-9).

[6]   ECF No. 10-10 at 6, 20, Uniform Application for Post-Conviction Relief and Memorandum in Support.

obtained the pornography; (2) failed to investigate and find defense witnesses; (3) failed to investigate and find evidence to contradict state witnesses; (4) failed to develop a meaningful relationship with him to acquire information critical to the defense; and (5) failed to poll the jury so that he could prove the verdict was not unanimous.    His second claim broadly asserted that he was denied the overall due process and equal protections guaranteed by the state and federal constitutions.    He argued that a societal "crime panic" wrongly permits individuals like him to be convicted as sex offenders based upon sheer accusations and innuendo, fostered by the unduly relaxed burden of proof afforded the prosecution under Louisiana Code of Evidence article 412.2, and that the burden of proof placed on petitioners seeking post-conviction relief under state law was unconstitutional. On April 4, 2022, the state district court issued a written judgment, with incorporated reasons, denying relief.[7]    The majority of the claims were denied on the merits; the state district court also cited La. C.Cr.P. art. 930.4(A)), declining to consider his claims regarding insufficiency of the evidence and admission of article 412.2 evidence, which had been addressed by the state courts on direct appeal.    On August 2, 2022, the Louisiana First Circuit denied Mischler's related supervisory writ application without assigning reasons.[8] On March 7, 2023, the Louisiana Supreme Court denied relief citing his failure to show that

---

[7]   ECF No. 10-10 at 124, "Judgment on Post-Conviction Relief With Incorporated Reasons for Judgment."

[8]   *State v. Mischler*, 2022 KW 0521, 2022 WL 3071555 (La. App. 1 Cir. 8/2/22); ECF No. 10-11.

he received ineffective assistance of counsel under *Strickland*.[9]

By application signed and dated March 16, 2023, Mischler submitted his federal petition for habeas corpus relief.[10]   In that application, he raises four claims for relief alleging ineffective assistance of trial counsel, which correlate to the first four grounds alleged in his state-court application for post-conviction relief.   His due process claim, while imprecise, arguably encompasses the claims raised on direct appeal (*i.e.*, the evidence was insufficient to convict him,[11] and state-law error in allowing prejudicial "lustful disposition" evidence under Louisiana Code of Evidence article 412.2), and post-conviction relief claims of violations of federal due process and denial of a fair trial because he was

---

[9]   *State v. Mischler*, 2022-KH-01361 (La. 2023), 356 So.3d 1009; ECF No. 10-12.

[10]   ECF Nos. 1, 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

[11]   The Court is aware that in the past Mischler has stated that he "is not arguing sufficiency of the evidence, he is presenting a claim of a denial of due process due to the prejudicial nature of our current society as it relates to sex offenses."   *See* ECF No. 10-12 at 22 (Louisiana Supreme Court Writ Application 22-KH-1361). Nonetheless, the Court has attempted to liberally construe his petition and properly frame the legal issues to consider the entirety of his "due process" claims.   Notably, to the extent Mischler argues that he "was convicted on less than sufficient evidence to prove each element of the crimes charged" and denied due process solely because he was an alleged sex offender for whom society denies constitutional protection due to "crime panics," the state district court, which issued the last reasoned opinion, construed the claim as alleging insufficient evidence to convict (albeit procedurally barred on state post-conviction under Louisiana Code of Criminal Procedure article 930.4(A)).   The Court will broadly construe the claim as such since the State has briefed the issue and the sufficiency claim was exhausted on direct appeal.   The Court further notes that Louisiana Code of Criminal Procedure article 930.4(A) is not itself a bar to federal habeas review. *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994).   This Court simply "look[s]-through" the ruling on collateral review and considers only the direct appeal proceeding. *Id.* at 1582-83.

wrongfully convicted on the speculative, prejudicial evidence allowed under 412.2, and he was subjected to an unfair burden of proof in his state-court post-conviction proceedings. The State does not challenge timeliness or assert that the claims are unexhausted or procedurally barred.[12]    The State argues that Mischler is not entitled to relief on the merits. Mischler objected to the State's response.[13]    He was given additional time upon request to file his reply and subsequently notified the Court that he stands on the previous objection.[14]

**Facts**

On direct appeal, the Louisiana First Circuit summarized the facts adduced at trial:

Following complaints to the National Center for Missing and Exploited Children, in October 2010 the United States Postal Inspector and Toronto Police Service conducted an investigation into a Canadian movie studio alternately called the "Toronto Company" and "Azov Films." The investigation revealed the company was producing and distributing child pornography. A search warrant was executed and the company's business records were recovered, including customer names and shipping addresses. Defendant's name, physical address, and email address were found in company records showing multiple purchases of child erotica[15]  and child pornography billed and shipped to defendant. A postal inspector then conducted a forensic investigation to confirm defendant was the person actually accessing the company's website. Ultimately, the inspector's investigation also determined that defendant's email address was used to set up an account on a website known for child pornography exchange. Further investigation revealed

---

[12]  ECF No. 12, State's Response at 1.

[13]  ECF No. 13.

[14]  ECF No. 16.

[15]  "Child erotica" was described at trial as being not explicitly pornographic, but still featuring "half-dressed, partially dressed" children of the same type as those featured in a suspect's child pornography collection.

defendant had been implicated in at least two formal allegations of child sex offenses, and he was also a known "educational worker." Having developed this information, a local postal inspector, with the assistance of the St. Tammany Parish Sheriff's Office, obtained a search warrant for defendant's residence.

On May 29, 2014, upon execution of the search warrant, law enforcement officers recovered from defendant's bedroom a large amount of physical and electronic child erotica and child pornography that exclusively featured juvenile boys, in addition to items matching those listed as sold to defendant by the "Toronto Company." Specifically, there were about 5,000 images[16] and 26 videos found on two thumb drives located in a nightstand next to defendant's bed. Some of the files had been accessed as recently as three to fifteen days before the search was conducted. Files had been created on the thumb drives over the course of five-and-a-half years. The creation dates, however, pertained to when the files were created on the thumb drives, not when the original image or video had been generated. Periods of relative inactivity on the thumb drive roughly corresponded with defendant's claimed medical issues that put him in repeated hospital care. The State also introduced testimony for demonstrative purposes, and over defendant's objection, about two videos that defendant was shown as ordering from Azov, but which were not physically found in his residence during the search.

Defendant, who was home at the time of the search, and after having voluntarily signed a waiver of his *Miranda*[17] rights, explained the child pornography was not his, that he had "been hacked on," and that he had caught "William" "seeing things on that computer before[.]" Defendant claimed "William" had put the photos on the thumb drives. After ascertaining "William" was W.G.,[18] defendant's nephew and victim, investigators interviewed him and obtained names of other possible victims, including J.S. and A.E.

---

[16] Fifty-four images were presented to the jury to correspond with the 54 counts of possession of child pornography. Those images shared the same range of creation dates as the larger volume of files.

[17] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[18] In accordance with LSA-R.S. 46:1844(W), the initials for then-minor victims will be used.

Subsequent police interviews with witnesses revealed victims M.M., G.W.,[19] and A.P. Further, following media coverage of the story, two more victims, S.L. and J.B., came forward. R.L., the final victim to testify, was involved in the only prior allegation against defendant to go to trial.

J.S., 25 years old at the time of trial, testified that defendant is his great-uncle. J.S. described how he would frequently go to defendant's house in New Orleans when he was about 11 years old and continued to do so later in St. Tammany Parish. J.S. testified in detail that while at defendant's house in New Orleans, defendant, unbidden, got into a shower with him and began to soap J.S.'s genitals with his bare hands. J.S. explained that after Hurricane Katrina, while defendant was living in St. Tammany Parish in a FEMA trailer, defendant would give him and other boys gifts and take them to the movies "[a]ny time [they] wanted to." During one visit to defendant's trailer, J.S. testified that defendant "performed oral pleasure on a sensitive area" while J.S.'s friend was out at the store and only stopped upon the friend's return. During his testimony at trial, however, J.S. said he did not "know the specifics" of that event.

J.S. described a later incident, still within a year of Katrina, where defendant took him to a hotel and again performed oral sex on him. On that occasion, defendant also attempted to anally penetrate J.S., but stopped when J.S. told him to stop. Defendant characterized his behavior to J.S. as being "a way of expressing love." According to J.S., defendant had a desktop computer that J.S., his friends, and defendant's family could use at his house, but that defendant had a password-protected laptop that no one else was ever allowed to use. J.S. conceded he had done some prison time for felony possession with intent to distribute marijuana and also admitted that he had only recently been released from prison. J.S. also had stolen money from defendant "a couple of times." Moreover, J.S. testified that he told no one of the abuse until the prosecutor approached him to talk about it in 2014. J.S. also was aware that defendant's house had been burglarized in the month before defendant was arrested. The State presented prison records indicating that, among other periods, J.S. was incarcerated between December 20, 2013 and July 14, 2014.

Defendant stated that up until the allegations for which he was then being tried, he had a "wonderful" relationship with J.S. Defendant denied ever touching J.S. in the shower in New Orleans, contended that J.S. was never alone

---

[19]  It is unclear from the record how G.W. came to the attention of law enforcement.

with him in his St. Tammany FEMA trailer and said that he never took J.S. alone to a hotel off US Hwy. 190. He acknowledged that J.S. had stolen from him.

S.L. related his experience as a Boy Scout with defendant, then a scout leader, nearly 40 years prior. At a scouting event, S.L., who was then 14 years old, was housed in a tent with defendant, who was 28 years old at the time. One evening, after defendant had pushed the bunks in the tent closer together, defendant took S.L.'s hand and placed it on defendant's penis three different times. S.L. first attempted to tell a 15 or 16-year-old about the incident, but was told by him "[d]on't say anything[,]" and "[y]ou'll get us all in trouble." The next day, S.L. was able to tell his father, a DEA agent. After no action was taken by the camp directors, S.L. and his father notified the local Sheriff's Department. Although defendant was initially arrested at the camp, the District Attorney eventually chose to not prosecute the case. Thirty years later, S.L. saw a news story about the allegations against defendant and chose to come forward with his own story.

Defendant testified at trial and reaffirmed he had been "found innocent of all of those charges." Defendant contended that S.L. had been previously caught with another staff member in bed, who was fired on the spot. He denied knowing S.L. would be in defendant's tent, and claimed that S.L. was mad at him because the staff member had been fired.

A.E., also a relative of defendant's, testified about an occasion when he was six or seven years old and spent the night with defendant at his home in New Orleans. A.E. was taking a bath, and defendant entered the bathroom asking if A.E. needed help. Defendant then used his bare hands to touch A.E.'s genitals under the pretense of washing him. A.E. also recalled that he would sit on defendant's lap, and defendant would place his hand on A.E.'s crotch. Defendant denied ever groping A.E. in the shower and stated that A.E. was infrequently at his house.

A.P., another family member of both J.S. and defendant, testified about time spent at defendant's home in New Orleans, which he confirmed was "a gathering point" for the family. A.P. explained that defendant purchased him clothes, shoes, and toys because his family was financially troubled. A.P. reported that he noticed defendant would be "pacing back and forth" in front of the bathroom while he showered. When A.P. was 10 or 11 years old, defendant would "rub the backside or the front side of his hand would rub up against the crack of [A.P.'s] butt." A.P. also said defendant would give him and

his underage male family members alcohol to drink. During at least one of those nights, when A.P. was around 12 or 13 years old, defendant performed oral sex on A.P. and had A.P. engage in anal sex with him. Following one incident, defendant asked A.P. if he had enjoyed the night before, and defendant said to him, "You're either gay or you're not. There's no in between" and that defendant "was very happy about it."

Defendant said he caught A.P., J.S., and W.G. smoking marijuana in his house, and he reprimanded them. He denied ever giving A.P. alcohol or engaging in sex acts with him.

W.G., J.S.'s half-brother, was 27 years old at the time of his testimony at defendant's trial. W.G. described defendant as the "patriarch" of the family and stated that his home in New Orleans was the "family home," where holidays and summer vacations would be spent. During one such trip, when W.G. was nine years old, he and defendant were scrolling through photos on defendant's password-protected computer when a photo of a naked boy briefly popped up. The next evening, after W.G. found the photos again on the computer, defendant woke up, and began fondling and performing oral sex on W.G. W.G. said over his lifetime, defendant had engaged in sexual activities such as oral sex, masturbation, and anal sex with him more than ten times. In another evening of drinking with defendant, A.P. and W.G. engaged in sex acts with each other, with defendant eventually joining them. W.G. testified that he witnessed defendant engaging in oral and anal sex with A.P. The sexual activities with defendant stopped when W.G. was about 16 years old, but he was aware that some occurred in St. Tammany Parish.

W.G. stated that he had never made any purchases on defendant's computer or with defendant's credit card and that defendant's computer was "locked down tight." W.G. also stated that he remembered seeing several thumb drives near defendant's computer and that defendant had once told him if defendant died, W.G. was to destroy them. W.G. acknowledged and described his five misdemeanor convictions for the jury. According to W.G., defendant would purchase alcohol and cigarettes for him and other young male acquaintances, if asked. The State presented jail records indicating W.G. was incarcerated or under close State supervision from April 30, 2012 until April 1, 2015. Among other periods within that span, W.G. was in jail from May 16, 2014 to June 12, 2014.

Defendant described a more tumultuous relationship, where W.G. said he

hated defendant because of a financial transaction gone wrong between defendant and his sister, W.G.'s mother. He claimed W.G. had stolen from him. He denied any kind of sexual relationship with W.G. and contested the dates W.G. lived at his house. Defendant claimed he never allowed alcohol in his house due to his brother being killed by a drunk driver. Defendant explained his computer was not password-protected until after a break-in in 2014, shortly before the search warrant was carried out on his house. Defendant's house was open to "a lot of people who [he] didn't know[.]"

G.W., who was about 25 years old at the time of trial, testified about the time period when he lived in Arkansas and his family hosted evacuees from Louisiana following Hurricane Katrina. Then 12 years old, G.W. shared his bedroom with defendant during defendant's time in Arkansas. G.W. remembered defendant bringing a laptop with him on which they, and sometimes others, would watch movies together. Defendant would sit uncomfortably close to G.W., sometimes placing a hand on G.W.'s leg. On one occasion, defendant placed his hand on G.W.'s genitals on the outside of G.W.'s shorts. A couple of days after the defendant and his family left G. W.'s home, G.W. told his mother, who then helped him report the incident to police. However, the case ultimately was never prosecuted.

Defendant suggested that he bought clothing for G.W.'s family. Defendant said G.W. stayed in another house while he was in Arkansas, that G.W. and his friends watched movies without him, and that he was never alone with G.W. Defendant said the case was dismissed because he "wasn't there." However, defendant later admitted he was "assigned to sleep" in G.W.'s room.

R.L., who was 42 years old at the time of trial, testified regarding his interactions with defendant in fifth grade, when defendant taught math at a public school in New Orleans. One day, while helping then 12-year-old R.L. alone at his desk, defendant began to rub R.L.'s inner leg and moved his hand to R.L.'s testicles. R.L. told his parents, and although the case went to a bench trial, defendant was found not guilty. R.L. related that he had two prior misdemeanor convictions for DUI and purse snatching.

Defendant alleged that R.L. was actually being molested by his father and claimed that he attempted to intervene to help R.L. The result of that attempted intervention, defendant posited, was the unfounded accusation against himself. Defendant testified that with the way the classroom was set up, he could not have touched R.L. without everyone else in the classroom

seeing, implying they were never alone.

J.B., who was 59 years old at trial, testified regarding his experience with defendant while in Boy Scouts. Defendant was an assistant Scoutmaster in J.B.'s troop. J.B. recounted one evening where the defendant, then 21 years old, slept between J.B., who was 13 years old, and another scout in a tent. While in the tent, defendant reached down into J.B.'s pants and began to grab and manipulate J.B.'s penis with his hand. On another occasion, during an overnight visit by defendant to J.B.'s home when he was 14 years old, J.B. woke up to defendant performing oral sex on him. J.B. was prompted to come forward after hearing a report of defendant's arrest on the instant charges.

Defendant claimed that a storm happened on the night of the alleged incident and that the storm kept him awake all night. He denied ever sleeping in a tent with "any child" or sleeping at J.B.'s home.

M.M.,[20]  who was 50 years old at trial, is defendant's nephew and godchild. M.M. described defendant as the patriarch of the family, who would at times provide financial assistance to other family members. M.M. testified that when he was about three years old, defendant took him into a room at a family home and put his penis through M.M.'s thighs from behind, but that there was no penetration. Later, after M.M. began living with defendant, defendant and defendant's brother would perform oral or anal sex on M.M. "two times a week or more," totaling "over a hundred times," until M.M. moved out at the age of 13. M.M. recounted how defendant made him swallow his ejaculate on each occasion of oral sex and how painful the anal sex was every time. Defendant told M.M. that if he told anyone, no one would believe him and that he would end up going to a boys home and would never see his mother again. M.M. testified he told no one until he disclosed the past events to his first wife, after he was having issues with alcohol and anger. Several years later, when meeting with defendant in a New Orleans restaurant, defendant confessed to both M.M. and his first wife that he had perpetrated the abuse, and that it was his "way of showing love" and "the only way he understood to show love." Defendant soon thereafter gave M.M. money to pay for therapy. M.M. admitted to three misdemeanor convictions.

---

[20]   In addition to witness B.M. being referred to by defense counsel as "M.M." in brief, the transcript reveals B.M. preferred to go by another first name. Therefore, in this opinion, he will be referred to as M.M.

Defendant admitted that he saw M.M. frequently as a child. Defendant claimed he did not hear of M.M.'s allegations until 2015, in a recording made subsequent to M.M. coming forward. He acknowledged that M.M. had once borrowed $ 1,500.00 from him and that M.M.'s ex-wife had once asked him for $ 400.00. He admitted going to the restaurant with M.M. and his ex-wife, but denied ever talking to her about M.M.

Additionally during his testimony, defendant explained his medical issues, dating back to 2003, some of which continued to the day of trial. Defendant claimed to have been in the hospital for periods of time through 2008-2012.

Defendant described how on the day the search warrant was executed, five police officers entered his house and began to search through everything. Defendant said his *Miranda* rights were not explained to him. Defendant denied ever implicating W.G. during the execution of the search warrant. Defendant claimed he had been "hacked" at the time the materials were ordered from the Toronto Company using his credit cards and email address and were sent to his home in New Orleans. He also claimed W.G. had been to his house at that same time to "help [him] pack and help [him] move." Defendant acknowledged that the Azov movies police found, which he claimed he did not order, were somehow transported from his old address to his new address and that the mailing address Azov had for the account created with his email address was changed when he moved.

Defendant claimed that he kept "stick drives" around his house so his students could copy things with them, and that he would find them scattered all over his house. Defendant claimed the stick drives were by his bed as a result of being temporarily put there after having originally been in the study, but were moved when his house was burglarized in May 2014. He stated that due to illness, he put things where he could reach them easily. Defendant admitted that after the robbery and until four weeks before the search warrant was executed, the only way to have used his laptop was to use it on the nightstand next to his bed. Defendant alleged that his laptops had been stolen in a robbery, and claimed that the one found by his bed was purchased to replace them.

Defendant denied ever hearing of Azov films and claimed anyone had access to his laptop, that he shared the passwords to his email accounts with his family members, and that his postal mailbox was accessible to anyone. He acknowledged that his main email account, the one used to purchase items

from Azov, was nearly exclusively accessed from the IP address associated with his home. Although defendant claimed he complained to the credit card company about hundreds of dollars of fraudulent charges, he denied knowing that charges to Azov films constituted some of those, and stated that the first time he became aware of those purchases was during the search of his house.

Explaining that he slept alone in his bed the night of the last recorded access of the thumb drive containing child pornography, he claimed that someone else "must have" accessed it at 4:30 in the morning, the "last accessed" time stamp on some of the files. Photographs introduced into evidence show a thumb drive on the nightstand on May 3, 2014, just after defendant's house had been robbed, and again on May 29, 2014, the day of the search warrant execution. Defendant argued that the photos showed two different thumb drives. Time stamps on some files on the drive seized by police indicate they were created during the early morning hours of May 23, 2014 and again accessed on May 26, 2014, while defendant was purportedly sleeping in the bed next to his computer. Defendant initially speculated he could have been in the hospital overnight when that occurred, but later admitted he had not been.

Dr. Benton Scott, accepted by stipulation as an expert in child abuse pediatrics, testified out-of-order, with the consent of defense counsel. Dr. Benton discussed delayed disclosure by children of sexual abuse. Additionally, Dr. Benton went through each of the photos supporting a count against defendant and gave an opinion as to whether the child subject was under the age of 17 and, if so, whether the child was also under the age of 13. He was unable to make a conclusive determination of the child being under 13 for all of the photographs, and he conceded that he had not interviewed any of the victims in the photographs or in the instant case.

Defendant's sister, Darlene Smith, testified. She said she had never seen or heard of inappropriate contact between defendant and children. She reported that W.G. had access to a computer in defendant's St. Tammany house and that "to her knowledge," there was no password on it. According to her, both J.S. and W.G. had stolen from defendant and would be around to help when defendant was ill. Darlene reported that defendant had replaced the two stolen laptops with a new one after the robbery and that he purchased clothes and shoes for any of the family's children when asked.

Amber Giordano, defendant's great-niece, also testified on his behalf. She stated she never saw any sexually inappropriate behavior involving defendant

or inappropriate behavior involving anyone else in the family. She admitted to forging a check written on defendant's account with W.G. She said that while defendant initially did not have a password on his laptop, he eventually put one on, but told the family what it was so that anyone could use it. She also acknowledged she was responsible for the robbery of defendant's house in May 2014.[21]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

---

[21]    *Mischler*, 2019 WL 2334219, at *1-7 (footnotes in original).

United States."   28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."   *Bell v. Cone*, 535 U.S. 685, 694 (2002).   A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.   *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).   An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."   *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014).

It is well-established that "an unreasonable application is different from an incorrect one."   *Bell*, 535 U.S. at 694.   A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.   *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").   "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.   *Harrington v. Richter*,

562 U.S. 86, 102 (2011).   Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."   *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

### A. Insufficient Evidence

Mischler asserts that the evidence presented by the State was insufficient to convict him. He argues that the only evidence presented to prove the oral sexual battery and molestation counts was the "incredible testimony of [J.S.], who is a known liar, has a criminal history and has committed multiple crimes against Mr. Mischler."[22]   He also complains that he was wrongfully convicted using witnesses' testimony [S.L., A.E., A.P., W.G. – referred to by Mischler as the "412.2 crew"], admitted pursuant to Louisiana Code of Evidence article 412.2, which included "unsubstantiated contradictory allegations and unprovable assertions to support that Mr. Mischler was a bad man."[23]   He alleges the witnesses offered incredulous testimony that should have been rejected, because "this group of friends who Mr. Mischler had tried to help on numerous occasions, had robbed and stole from him, had used his

---

[22]   ECF No. 3-1 at 31.

[23]   ECF No. 3-1 at 32.

computer to purchase items from the internet, and had broken into his home many times."[24]

He alleges that he endured a "crime panic prosecution," where he was convicted based on

"allegations, fear and innuendo" and "unreliable speculative evidence that [he] was the

actual person that committed these crimes."[25]

On direct appeal, the state courts found the evidence sufficient and upheld his

convictions.     In denying the claim, the court of appeal reasoned:

> In his second assignment of error, defendant contends he was convicted with
> insufficient evidence. Regarding the charges involving J.S., defendant asserts
> that J.S. could not remember any details of the events and that the jury only
> convicted him on the weight of evidence presented under LSA-C.E. art. 412.2.
> Regarding the possession of child pornography charges, defendant primarily
> argues that the State did not prove beyond a reasonable doubt that his house
> was not burglarized and the incriminating evidence was left by someone else.
> Defendant also makes assertions without citations to the record that there
> were "discrepancies in dates of when pornographic media was added to the
> thumb drives and when appellant was ill" thereby making it impossible for
> him to do so. The State argues the evidence submitted to the jury was sufficient
> to support the convictions.

> A conviction based on insufficient evidence cannot stand, as it violates Due
> Process. *See* U.S. Const, amend. XIV; La. Const, art. I, § 2. The standard of review
> for the sufficiency of the evidence to uphold a conviction is whether, viewing
> the evidence in the light most favorable to the prosecution, any rational trier
> of fact could have found the essential elements of the crime beyond a
> reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789,
> 61 L.Ed.2d 560 (1979); *see also State v. Ordodi*, 2006-0207 (La. 11/29/06), 946
> So. 2d 654, 660; *State v. Mussall*, 523 So. 2d 1305, 1308-09 (La. 1988); *State v.
> Kitts*, 2017-0777 (La. App. 1st Cir. 5/10/18), 250 So. 3d 939, 948. The *Jackson*
> standard of review, incorporated in LSA-C.Cr.P. art. 821, is an objective
> standard for testing the overall evidence, both direct and circumstantial, for

---

[24]  *Id*.

[25]  ECF No. 3-1 at 30.

reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that, in order to convict, the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. *See State v. Dyson*, 2016-1571 (La. App. 1st Cir. 6/2/17), 222 So. 3d 220, 228, *reh'g denied* (July 13, 2017), *writ denied*, 2017-1399 (La. 6/15/18), 257 So. 3d 685. When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Thaddius Brothers.*, 2017-0870 (La. App. 1st Cir. 11/1/17), 233 So. 3d 110, 113, *writ denied sub nom., State v. Brothers.*, 2017-2160 (La. 10/8/18), 253 So. 3d 803; *State v. Wright*, 98-0601 (La. App. 1st Cir. 2/19/99), 730 So. 2d 485, 487, *writ denied*, 99-0802 (La. 10/29/99), 748 So. 2d 1157, *writ denied sub nom., State ex rel. Wright v. State*, 2000-0895 (La. 11/17/00), 773 So. 2d 732.

An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. *State v. Moultrie*, 2014-1535 (La. App. 1st Cir. 12/14/17), 234 So. 3d 142, 146, *writ denied*, 2018-0134 (La. 12/3/18), 257 So. 3d 1252. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness, including an expert. *State v. Leger*, 2017-0461 (La. App. 1st Cir. 11/15/17), 236 So. 3d 577, 585. The fact that the record contains evidence that conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Morgan*, 2012-2060 (La. App. 1st Cir. 6/7/13), 119 So. 3d 817, 826. Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the fact finder, is sufficient to support a factual conclusion. *State v. Malarcher*, 2017-1497 (La. App. 1st Cir. 4/13/18), 249 So. 3d 837, 844.

Oral sexual battery, as defined by the version of LSA-R.S. 14:43.3 in effect at the time of the offenses, reads in pertinent part:

A. Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender when the other person has not yet attained fifteen years of age and is at least three years

younger than the offender:

1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender; or

2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.

Moreover, molestation of a juvenile is defined in LSA-R.S. 14:81.2(A)(1) as:

the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.

Finally, pornography involving juveniles is defined in LSA-R.S. 14:81.1 and provides in pertinent parts:

A. (1) It shall be unlawful for a person to produce, promote, advertise, distribute, possess, or possess with the intent to distribute pornography involving juveniles.

The penalty for violation of LSA-R.S. 14:81.1 differs between possession of pornography depicting those under the age of 17 and possession involving juveniles under the age of 13. *See* LSA-R.S. 14:81.1(E)(1)(a); 14:81.1(E)(5)(a).

Defendant does not contest that the actions alleged constituted the offenses, only that the evidence was insufficient to establish that he perpetrated them. However, regarding the offenses against J.S., given the great discretion afforded to the factfinder, defendant merely highlights the fact that J.S. said he could not remember the detailed specifics of each event. As the trier of fact, the jury was free to accept or reject J.S.'s incomplete recollection of events. Moreover, the jury was aware of his criminal history, and the jury evidently believed J.S.'s version of events over defendant's assertions that nothing occurred and that he was wholly unaware of J.S.'s claims until he was arrested on May 29, 2014. Moreover, given the consistency of J.S.'s allegations with

defendant's prior acts with other boys of similar age as detailed in the previous assignment of error, when viewed in a light most favorable to the prosecution, the jury had sufficient evidence to find the essential elements of the charges beyond a reasonable doubt. Thus, the jury had sufficient evidence to return convictions on all three counts.

Similarly, in addition to defendant's internally inconsistent or incredulous testimony and the consistent testimony from witnesses that defendant's computer was password-protected and others were not allowed to use it, the State presented forensic evidence that showed either that defendant possessed the child pornography or that someone had used his laptop while he slept next to it. Although he claimed at trial and again on appeal, that he was in the hospital at the time the photographs were downloaded, it was within the province of the jury to accept or reject his testimony. Similarly, although defendant argued below, and presented testimony from his sister and niece to confirm his claim that his computer and email accounts were always open and available to anyone who entered his house, whether he knew them or not, the jury apparently and reasonably found this explanation implausible. Given the weight of the evidence against defendant, the jury was not unreasonable in rejecting defendant's claims that someone else put the child pornography in his bedroom or in finding him guilty of every count of possession of child pornography beyond a reasonable doubt.

This claim is also without merit.[26]

The Louisiana Supreme Court denied relief without additional stated reasons.

The Louisiana First Circuit properly analyzed the claim using the *Jackson v. Virginia* standard, which requires a determination regarding whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.[27]      *Jackson v.*

---

[26]  *Mischler*, 2019 WL 2334219 at *10-12.

[27]  Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does not apply in federal habeas corpus proceedings; only the *Jackson* standard need be satisfied, even if state law would impose a more

*Virginia*, 443 U.S. 307, 319 (1979); *Williams v. Cain*, 408 F. Appx. 817, 821 (5th Cir. 2011);

*Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).    Review of the sufficiency of the evidence

does not include review of the weight of the evidence or the credibility of the witnesses,

because those determinations are the exclusive province of the jury.    *United States v. Young*,

107 F. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th

Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve

conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

basic facts to ultimate facts").    Thus, all credibility choices and conflicting inferences must

be resolved in favor of the verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the

evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*,

55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the

correct guilt or innocence determination, but rather whether it made a *rational* decision to

convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting

*Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis added)).

Here, the court of appeal concluded that the evidence was sufficient for the jury to

find beyond a reasonable doubt that Mischler was guilty of oral sexual battery, molestation

of a juvenile, and possession of pornography involving juveniles.    Because a claim

---

demanding standard of proof.    *Foy v. Donnelly*, 959 F.2d 1307, 1314 n. 9 (5th Cir. 1992).

challenging the sufficiency of the evidence presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).   Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."   *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

On direct appeal, counsel for Mischler asserted interrelated claims concerning the State's alleged improper introduction of "lustful disposition" evidence by multiple witnesses, whom Mischler refers to as the "412.2 crew," and insufficiency of the evidence to support his convictions.   Because the state courts held that the "other crimes" evidence was admissible in this case as a matter of state evidentiary law, this federal habeas court may not second-guess the accuracy of that ruling.   *See Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011) ("Because the state determined that [the] testimony [at issue] was permissible ... under state evidentiary law ..., a federal habeas court may not conclude otherwise.   Under § 2254, federal habeas courts sit to review state court misapplications of federal law.   A federal court lacks authority to rule that a state court incorrectly interpreted its own law.

When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions are state law." (citations omitted)); *Bridges v. Tanner*, Civ. Action No. 17-1925, 2019 WL 3774446, at *7 (E.D. La. Aug. 12, 2019) ("State courts are the final arbiters of state law, and this Court may not question the Louisiana Supreme Court's interpretation of the Louisiana Code of Evidence." (footnote omitted)).

Here, as noted by the state court of appeal, given the "other crimes" testimony by multiple witnesses, which was consistent with J.S.'s compelling, credible testimony regarding the sex acts perpetrated by Mischler,[28] the evidence was sufficient to show that Mischler was guilty of two counts of oral sexual battery and one count of molestation of a juvenile.    Indeed, the testimony of J.S. alone was compelling.    *See Bonney v. Tanner*, Civ. Action No. 18-7978, 2019 WL 5790808, at *12 (E.D. La. June 7, 2019) ("[A] positive identification by only one witness is sufficient to support a conviction. A positive identification by a victim, as well as the victim's testimony alone, also is sufficient identification evidence regarding the crime committed against that victim." (citation omitted)), *adopted*, 2019 WL 5784998 (E.D. La. Nov. 6, 2019); *Holderfield v. Jones*, 903 F. Supp. 1011, 1017 (E.D. La. 1995) ("A victim's positive identification (or by any one witness) of a defendant as well as the victim's testimony alone has been held to constitute sufficient evidence regarding the crime committed against the victim.").    While Mischler continues to dispute J.S.'s credibility, that matter was resolved by the jury in J.S.'s favor.    On cross

---

[28]   ECF No. 10-3 at 148-49, 152-57 [J.S. testimony].

examination, the defense highlighted J.S.'s inability to recall detailed facts, J.S.'s criminal past, and stealing from Mischler,[29] but upon weighing the evidence, the jury still chose to credit J.S.'s testimony over the conflicting testimony offered by the defendant Mischler.

Mischler disputes the credibility of every single witness who testified about past sexual interactions with him.   However, to the extent he argues for a different credibility determination, that argument must fail.   As the state appellate court reasoned, any inconsistencies or contradictions in the testimony were properly considered and weighed by the jury.   Credibility determinations are the province of the jurors, and a federal habeas court generally will not grant relief on a sufficiency claim grounded on such matters of credibility.   *See Schlup v. Delo*, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ("[U]nder *Jackson* [*v. Virginia*] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)], the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93–5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the *Jackson* standard for habeas relief."); *Phillips v. Cain*, Civ. Action No. 11–2725, 2012 WL 2564926, at *14 (E.D. La. April 11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012); *Picou v. Cain*, Civ. Action No. 06–6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

Despite differing testimony about whether his computer was password protected or

---

[29] *Id*. at 162-70.

freely accessible,[30]   the jury obviously rejected Mischler's defense that the pornography was purchased and accessed by someone else.     The inconsistency was merely one factor for the jury to weigh in assessing witness credibility.     The Louisiana First Circuit outlined the evidence introduced by the State to support the possession of pornography conviction and the incredulous nature of the defendant's testimony in his own defense and concluded that the jury was not unreasonable in rejecting his claims that someone else put the child pornography in his bedroom.

When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.     Mischler cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

B. Due Process – Unconstitutional State Statutes and "Other Crimes" Evidence

Under the "due process" rubric, Mischler frames his ground for relief as follows:

He has been denied the basic principles of the law where he has been denied due process, the right to present a defense, the right to effective assistance of counsel, and the overall due process and equal protections of law contrary to constitutional protections of Louisiana and the United States.

However, alleging only broad legal concepts as claims, without explanation, will not suffice to state a ground for relief on federal habeas review.     Therefore, the Court has reviewed

---

[30]  ECF No. 3-1 at 34 (citing W.G.'s trial testimony).

his brief thoroughly in order to determine his precise legal arguments and liberally gleans the following claims for relief:    (1) insufficiency of the evidence (previously addressed); (2) Louisiana Code of Evidence article 412.2 is unconstitutional; (3) regardless, the state courts misapplied article 412.2, and erroneously allowed irrelevant and prejudicial evidence at trial, which denied him due process and a fundamentally fair trial; and (4) Louisiana Code of Criminal Procedure article 930.2 is unconstitutional.[31]

As previously stated, on direct appeal, the Louisiana First Circuit rejected his claim that he was denied due process because he was convicted on insufficient evidence.    The appellate court also determined that the article 412.2 witness testimony involving "other crimes" evidence was properly admitted as a matter of state law pursuant to Louisiana Code of Evidence article 412.2.    The federal "due process" claims were raised in his application for post-conviction relief and rejected by the state courts.    In denying his "due process" claims, the state district court reasoned:

*Claim 2- Denial of Rights*

Mischler asserts he has been denied the basic principles of law where he has been denied the right to present a defense, the right to effective assistance of counsel, and the overall due process and equal protections guaranteed by the state and federal constitutions.    Mischler states that people accused of sex offenses have their rights affected by the mere allegation that they have committed those types of crimes.    He argues that once you are accused of

---

[31]    It appears that Mischler's overly vague "due process" claim resulted in varied interpretations on the issues presented.    The State's response construes the generalized claim as alleging only insufficient evidence to support the convictions.    Mischler disputes this interpretation in his objection, noting "the State's complete failure to even address the Due Process and Equal Protection issue."    ECF No. 13.

those crimes, you are considered to be guilty.

In this vein, the petitioner either downplays or complains about the lack of clarity in the testimonies of the witnesses against him.     The Court notes that the court of appeal denied these concerns when it performed a thorough review of the defense's claims of insufficiency of the evidence and the admission of Art. 412.2 evidence on direct appeal.     Insofar as the petitioner raises similar claims, the Court finds those claims should not be considered. *See* La. C.Cr.P. art. 930.4 (A).

Mischler contends that La. C.E. art. 412.2 lessens the burden of proof by the state, which is a violation of due process. The Court finds that Art. 412.2 is an exception to the general rule prohibiting the introduction of evidence of other crimes, wrongs or acts to prove a person's character or propensity to commit criminal activity. *See State v. Layton*, 2014-1910, p. 3 (La. 3/17/15), 168 So.3d 358, 359. Instead, Art. 412.2 allows evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children. *See* La. C.E. art. 412.2 (A). The Court holds that there is a presumption that Art. 412.2 is constitutional, and any doubt is to be resolved in the statute's favor. *See State v. Fussell*, 2019-1061, p. 9 (La. 12/11/19), 286 So.3d 1011, 1017, *cert. denied*, 141 S.Ct 238 (2020). The Court finds that the court of appeal examined the merits of each of the petitioner's claims with regard to Art. 412.2, and found the claims to be without merit. Insofar as the petitioner raises claims already asserted on direct appeal, the Court finds those claims should not be considered. *See* La. C.Cr.P. art. 930.4(A). This Court agrees with the appellate court that no due process violation occurred in this case, nor has petitioner presented sufficient reason to find the statute to be an unconstitutional violation of due process in general.

Finally, Mischler argues that La. C.Cr.P. art. 930.2 is an unconstitutional denial of due process, as the statute shifts the burden of proof onto the petitioner in a post-conviction proceeding. Mischler relates how difficult it is for a prisoner to gather records or contact witnesses due to prison regulations. He also asserts that the lack of appointed counsel or access to an investigator further hinders a convicted defendant from presenting post-conviction claims.

Art. 930.2 provides: "The petitioner in an application for post-conviction relief shall have the burden of proving that relief should be granted." As noted previously, statutes are presumed to be constitutional and any doubt is to be

> resolved in the statute's favor. *See Fussell*, 2019-1061, p. 9, 286 So.3d at 1017. The Court finds the burden shifting authorized by the statute is appropriate on post-conviction. "Our justice system provides a defendant with a presumption of innocence ***until proven otherwise***. This presumption is fundamental to the fairness that a defendant is entitled to receive" and is enshrined in our state constitution at La. Const. art. I § 16. *See State v. LeBoeuf*, 2006-0153, p. 12 (La. App. 1 Cir. 9/15/06), 943 So.2d 1134, 1141-1142 (emphasis added). After a criminal defendant is found guilty of the charges brought against him, however, he is no longer entitled to a presumption of innocence and must bear the burden of proving his entitlement to post-conviction relief.    The Court finds no merit to the petitioner's claim.[32]

The state appellate courts likewise denied relief without additional stated reasons.

Regarding his constitutional challenge to the statutory provisions, Mischler argues that Louisiana Code of Criminal Procedure article 930.2 unfairly shifts the burden of proof to petitioners in a state post-conviction proceeding, which effectively prevents *pro se* petitioners without knowledge of the law or access to counsel from presenting supported claims in state post-conviction relief proceedings.[33]    He also contends that Louisiana Code of Evidence article 412.2 lessens the State's burden of proof by requiring a less stringent similarity requirement than article 404(B), specifically for sex offenses.[34]    He claims the law was created to appease the "sex offender crime panic," similar to the Salem witch trials, in order to persecute individuals accused of sexual offenses unfairly and without due process

---

[32]   ECF No. 10-10 at 129-30.

[33]   ECF No. 3-1 at 35.

[34]   ECF No. 3-1 at 31-32.

of law.[35]

To the extent Mischler raises a purely state-law claim (*i.e.*, the trial court improperly allowed testimony from purported victims about other crimes under state-evidentiary article 412.2), it is not properly before this Court on federal habeas corpus review.   Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).   The issue of whether a state statute violates the Louisiana constitution is a matter left to the state courts.   *See*, *e.g.*, *Michigan Central Railroad Co. v. Powers*, 201 U.S. 245, 290, 26 S.Ct. 459, 50 L.Ed. 744 (1906) ("If conflict with the state Constitution is the sole ground of attack, the supreme court of the state is the final authority...."); *Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co.*, 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.   Nor does a federal habeas review court sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)).

Furthermore, to the extent Mischler alleges a federal claim, it does not warrant habeas relief.   Mischler must show that the denial of his claim by the state courts "was contrary to,

---

[35]   ECF No. 3-1 at 28-30.

or involved an unreasonable application of, *clearly established Federal law, as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added). Mischler cites no state or federal law, much less controlling federal precedent from the United States Supreme Court, supporting his contention that these statutory provisions violate federal due process. *See Zeno v. LeBlanc*, Civ. Action 17-6234, 2018 WL 2163800, at *7 (E.D. La. Feb. 1, 2018), *adopted*, 2018 WL 2149235 (E.D. La. May 10, 2018); *Trimble v. Cain*, Civ. Action 14-876, 2016 WL 3946498, at *11 (W.D. La. June 29, 2016), *adopted*, 2016 WL 4443649 (W.D. La. Aug. 19, 2016); *Duckett v. Vannoy*, Civ. Action No. 16-6823, 2017 WL 6001729, at *11 (E.D. La. June 7, 2017), *adopted*, 2017 WL 5992077 (E.D. La. Dec. 4, 2017) (no clearly established federal law set forth by the Supreme Court holding that co-defendants have a right under the Due Process Clause not to be joined for trial, even for defendants with antagonistic defenses), *certificate of appealability denied*, 2018 WL 11252843 (5th Cir. Oct. 2, 2018). Furthermore, as for any alleged inadequacies in his state-court proceedings due to the purported unconstitutional burden placed on him to prove his entitlement to post-conviction relief, infirmities in state habeas corpus proceedings do not constitute grounds for habeas relief. *Vail v. Procunier*, 747 F.2d 277 (5th Cir. 1984); *McGuire v. Davis*, Civ. Action 17-171, 2020 WL 5134786, at *6 (N.D. Tex. Aug. 5, 2020) (denying petitioner's claim that his state habeas corpus proceedings were defective and inadequate because "[a]n unconstitutional state post-conviction statute led to a defective fact-finding process). Thus, the state-court determination of these claims was not unreasonable, and Mischler has

not shown that he is entitled to relief on his claims that the state statutory schemes deprived him of due process.

Finally, Mischler arguably challenges the improper admission of witness testimony under article 412.2, because it denied him due process and a fair trial.   He contends "this kind of evidence was allowed and had absolutely no evidentiary value to the instant allegations and was offered for the sole purpose of confusing the fact finders, caused unnecessary severe prejudice to the petitioner, and sparked the fear of the jurors."[36] However, to the extent he might argue that the trial court denied him due process and a fair trial by improperly allowing testimony to be admitted under Louisiana Code of Evidence article 412.2, he is not entitled to federal habeas relief.[37]

The state courts found no error under state law in admitting the evidence.[38]   On

---

[36]   ECF No. 3-1 at 34.

[37]   The state district court explained that because the Louisiana First Circuit performed a thorough review on the merits and denied the intertwined sufficiency and admissibility of evidence claims on direct appeal, the claim should not be considered on post-conviction review pursuant to Louisiana Code of Criminal Procedure article 930.4(A).   The district court also held that it "agrees with the appellate court that no due process violation occurred in this case, nor has petitioner presented sufficient reason to find the statute [412.2] to be an unconstitutional violation of due process in general."   ECF No. 10-10 at 130.   Louisiana Code of Criminal Procedure Article 930.4(A) does not serve as a procedural bar to federal habeas review. *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994).   This Court simply "look[s]-through" the ruling on collateral review and considers only the direct appeal proceeding. *Id*. at 1582-83.

[38]   The issue regarding timeliness of the trial-court ruling on the State's motion to introduce evidence pursuant to article 412.2, was not properly preserved for appellate review.   *Mischler*, 2019 WL 2334219 at *7.   The record contains no hearing transcript on the State's motion because it was discussed in chambers and at a bench conference before

direct appeal, the Louisiana First Circuit reasoned:

> In his first assignment of error, defendant contends the trial court erred by permitting the State to present testimony from five (out of eight) LSA-C.E. art. 412.2 witnesses, R.L., S.L., G.W., W.G., and M.M. that "did nothing more than inflame the jury" and did not provide "outweighing probative value." Additionally, defendant alleges the trial court erred when it permitted the State to introduce the titles and still images of pornographic media not found at defendant's residence during the execution of the search warrant. Finally, defendant argues the trial court erred by failing to rule on the State's motion to introduce evidence under LSA-C.E. art. 412.2 until after the conclusion of testimony and the jury had begun deliberations. The State counters that the testimony of M.L.[sic], S.L., G.W., W.G., and M.M. was properly admitted probative evidence and that there was no prejudice, where the trial court made a formal statement recording its pre-trial decision to permit the admission of the evidence.

> Timeliness of the court's ruling on the State's motion

> As an initial matter, the State filed a motion to introduce "lustful disposition" evidence under LSA-C.E. art. 412.2. The trial court granted that motion during a bench conference, but the court's ruling was not placed on the record at that time. Instead, following the jury being charged and sent to deliberate, the trial court put its ruling on the record, referencing the fact it had been ruled upon pre-trial, and defendant objected. However, his objection apparently was directed to the granting of the motion and was not objected to on the basis that the ruling was untimely noted on the record. Accordingly, this assignment lacks merit and was not presented for review.

> Five 412.2 witnesses

> Generally, courts may not admit evidence of other crimes or bad acts to show defendant is a man of bad character who has acted in conformity with his bad character. LSA-C.E. art. 404(B)(1). However, the State may introduce evidence of other crimes if the State establishes an independent and relevant reason, *i.e.*, to show motive, opportunity, intent, or preparation, or when the evidence relates to conduct which constitutes an integral part of the act or transaction

---

trial; thus, only the ruling appears in the record, having been formalized and made part of the record at the state prosecutor's request at the end of trial.    ECF No. 10-5 at 206-08.

that is the subject of the present proceeding. LSA-C.E. art. 404(B)(1). Even when the other crimes evidence is offered for a purpose allowed under Article 404(B), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. *State v. Prieur*, 277 So. 2d 126, 130 (La. 1973), *abrogated on other grounds by State v. Taylor*, 2016-1124 (La. 12/1/16), 217 So. 3d 283, 292. Moreover, the State must provide the defendant with notice that it intends to offer prior crimes evidence. *Prieur*, 277 So. 2d at 130. Additionally, the State must prove by a preponderance of the evidence that defendant committed the other acts. LSA-C.E. art. 1104; *Huddleston v. United States*, 485 U.S. 681, 690-91, 108 S.Ct. 1496, 1501-02, 99 L.Ed.2d 771 (1988); *State v. Brue*, 2009-2281 (La. App. 1st Cir. 5/7/10), 2010 WL 1838383 *6 at n.4 (unpublished), *writ denied*, 2010-1317 (La. 1/7/11), 52 So. 3d 883.

Further, LSA-C.E. art. 412.2(A) provides in pertinent part:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

Under LSA-C.E. art. 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Evidence is deemed relevant if such evidence has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. art. 401. A trial court's ruling on the admissibility of the additional other crimes evidence will not be disturbed absent an abuse of discretion. *State v. Jackson*, 2018-0261 (La. App. 1st Cir. 11/2/18), 265 So.3d 928, 939 (unpublished).

Defendant claims that while M.M. and W.G. accused defendant of both oral and anal rapes on multiple occasions, J.S. never alleged anal rape. Defendant argues that consequently, the mere allegation would only serve to inflame the jury. Defendant further asserts that in each of the cases of R.L., S.L., and G.W.,

defendant was either never charged with, or was acquitted of, an offense by authorities.

Regarding the testimonies of M.M. and W.G., defendant relies upon *State v. Jackson*, 625 So. 2d 146 (La. 1993) in support of his contentions.[39]  In *Jackson*, the Court found in that specific circumstance that the prejudicial effect of introducing evidence a defendant raped one daughter, exposed his penis to another, and fondled the vaginas of both outweighed the probative value in a case where the defendant was only accused of kissing and fondling his granddaughters. *Jackson*, 625 So. 2d at 152.

However, both this court and the Louisiana Supreme Court have held that a defendant's statement "to his neighbor's child that he had seen her naked in his bedroom with her arms and legs open" was admissible to show an intent to molest his niece and "to show that the molestation was not an accident." *State v. Miller*, 98-0301 (La. 9/9/98), 718 So. 2d 960, 966 (affirming *State v. Miller*, 97-0037 (La. App. 1st Cir. 12/29/97), 704 So. 2d 1279). Additionally, courts in Louisiana have consistently held that prior crimes differing from those at issue in their respective cases are still probative to establish a defendant's "lustful disposition." *See State v. Floyd*, 51,869 (La. App. 2nd Cir. 6/27/18), 250 So. 3d 1165, 1171, *writ denied*, 2018-1292 (La. 2/25/19), 266 So.3d 288; *State v. Kurz*, 51,781 (La. App. 2nd Cir. 2/28/18), 245 So. 3d 1219, 1227, *writ denied*, 2018-0512 (La. 1/18/19), 262 So. 3d 285; *State v. Friday*, 2010-2309 (La. App. 1st Cir. 6/17/11), 73 So. 3d 913, 927, *writ denied*, 2011-1456 (La. 4/20/12), 85 So. 3d 1258.

Moreover, unlike the instant case, the conduct found overly prejudicial in *Jackson* was significantly different than that with which that defendant was charged. The "difference" in conduct in this case is not distinctly or significantly different. Instead, J.S. testified that defendant unsuccessfully attempted to anally rape him during their visit to the hotel where the second oral sexual battery was alleged to have occurred; the State presented testimony that defendant was successful in anally penetrating W.G. and M.M.; and J.S. testified that defendant "merely" attempted to do so with J.S. Thus, the trial court did not abuse its considerable discretion when permitting the introduction of prior bad acts involving M.M. and W.G.

---

[39] As noted by defendant and the State in brief, *Jackson* was decided before the promulgation of LSA-C.E. art. 412.2. *See State v. Layton*, 2014-1910 (La. 3/17/15), 168 So. 3d 358, 359-60.

Moreover, the fact that defendant was not convicted for his prior actions involving R.L., S.L., and G.W. does not render them irrelevant or inadmissible. *See State v. Cox*, 2015-0124 (La. App. 4th Cir. 7/15/15), 174 So. 3d 131, 138, *writ denied*, 2015-1557 (La. 10/10/16), 207 So. 3d 407 (evidence of defendant's uncharged crimes was relevant to issues of defendant's intent, plan, knowledge, and absence of mistake or accident). No testimony was adduced explaining the reasons for the ultimate dispositions of the cases not brought to trial. Also, notwithstanding defendant's proclamations to the contrary, only one case, R.L.'s, was resolved with a "not guilty" verdict. The burden on the State at the instant trial regarding the prior acts was to prove them by a preponderance, not beyond a reasonable doubt required to obtain a conviction. *Cf. State v. Harris*, 2011-253 (La. App. 5th Cir. 12/28/11), 83 So. 3d 269, 278, *writ denied sub nom.*, *State ex rel. Harris v. State*, 2012-0401 (La. 8/22/12), 97 So. 3d 376. The language of LSA-C.E. art. 412.2 is broad enough to include previous allegations of misconduct, even if they did not result in final conviction. *Cf. State v. Cotton*, 2000-0850 (La. 1/29/01), 778 So. 2d 569, 578; *see also Dowling v. United States*, 493 U.S. 342, 349, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990) (acquittal does not preclude Government from re-litigating issue in subsequent action governed by lower standard of proof). Moreover, defendant presents nothing to suggest the "jury would be lured by the evidence of the uncharged offenses ... into convicting [defendant] based on anything less than a reasonable doubt[.]" *Cox*, 174 So. 3d at 138. In fact, defendant himself highlighted that the allegations did not result in convictions on multiple occasions, thus arguing that the jury should afford the testimony little weight. Consequently, on the record before us, the admission of the prior allegations was not an abuse of the trial court's discretion.

Further, moving beyond the five witnesses highlighted by defendant, there is a clear pattern in the ages, gender, and status of all of defendant's victims notwithstanding that the abuse occurring over decades. Specifically, R.L. was 12 years old and a student of defendant; S.L. was 14 years old and in scouting under defendant's supervision; G.W. was 12 years old and living with defendant as his family hosted defendant's family after Katrina; and J.G. was 13 years old and in scouting under defendant's care. Also, W.G., who was 9 to 16 years old during the abuse; M.M., who was 3 to 13 years old during the abuse; A.P., who was 10 to 13 years old during the abuse; and A.E., who was 6 or 7 years old during the abuse, were all family members who were placed under defendant's care or supervision at some point in their lives. Here, the trial court evidently concluded that defendant's hebephillic preferences were

> substantially similar enough as to be both probative and not unduly prejudicial. All of defendant's victims were in their early-to-mid teens, and defendant was in a position of authority over them as a caregiver, "patriarch," teacher, or scout leader. R.L., S.L., and G.W. found themselves alone with defendant in a classroom, tent, or bed, where he began to fondle their genitals with his bare hand. W.G. and M.M. were family members and in defendant's care when he repeatedly raped them. Accordingly, we find no error in the trial court's admission of all eight witnesses' testimony into evidence.[40]

The Louisiana Supreme Court denied relief without additional stated reasons.

To the extent Mischler argues that the evidence was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review.    *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).    Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).    Federal courts do not sit to review the propriety of state court evidentiary rulings unless the proceedings violate due process and render the criminal proceeding fundamentally unfair.    *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

Furthermore, Mischler has failed to establish any error by the trial court that would trigger review under due process standards.    *Robinson v. Whitley*, 2 F.3d 562, 566-67 (5th

---

[40]    *Mischler*, 2019 WL 2334219, at *7-10 (footnote in original).

Cir. 1993) (where petitioner cannot demonstrate an error in the ruling under Louisiana state law, no due process claim exists).    The state courts unanimously found that the evidence was properly admitted under La. C.E. article 412.2, and that article 412.2 itself was constitutional.    Indeed, the Louisiana Supreme Court has held that article 412.2 was enacted to lower the obstacles to admission of "propensity evidence" in sexual assault cases, especially those involving children.    *State v. Williams*, 2002-1030 (La. 10/15/02), 830 So.2d 984, 986-87; *see also State v. Layton*, 2014-1910 (La. 3/17/15), 168 So.3d 358, 360 (change in language in amended Article 412.2 in 2004 significantly broadened the scope of evidence admissible).    Here, the evidence presumably was weighed subject to the balancing test concerning probative value versus prejudicial effect and deemed admissible for the reasons expressed above on direct appeal, namely that it showed a clear pattern and lustful disposition towards young boys.    Mischler presents nothing to show that jurors were confused by the testimony of the article 412.2 witnesses or unduly influenced to reach an improper verdict on the charges involving the victim, J.S., or for possession of pornography. In fact, jurors were given a limiting instruction on "proof of other offenses," and warned that evidence that the defendant was involved in the commission of offenses other than the offenses for which he is on trial is to be considered only for a limited purpose, and that the accused is on trial only for the offenses charged.    It further cautioned that jurors may not find him guilty of this offense merely because he may have committed another

offense.[41]    Because he has shown no error in the admission of the evidence, there is no basis for his claim that he was denied due process or a fundamentally fair trial.    *See*, *e.g.*, *Peterson v. Day*, Civ. Action No. 2022 WL 16825213, at *21-22 (E.D. La. Sep. 1, 2022), *adopted*, 2022 WL 16758322 (E.D. La. Nov. 8, 2022).    Mischler has not shown that he is entitled to federal habeas relief on this claim.

### C. Ineffective Assistance of Trial Counsel

Mischler alleges several instances of ineffective assistance of trial counsel under the broad rubric of inadequate investigation and preparation of a defense (*i.e.*, failure to obtain material evidence and call witnesses).[42]    He asserted the same claims during state post-conviction relief proceedings, and the state district court issued a judgment denying the claims with detailed written reasons.    The state appellate courts likewise denied relief without citing additional reasons.    Because such claims present mixed questions of law and fact, Mischler is entitled to federal habeas relief only if he shows that the state-court decision denying the claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).    For the following reasons, he has not made that showing.

The state courts analyzed the claims under the proper controlling framework,

---

[41]   ECF No. 10-1 at 179-80; ECF No. 10-5 at 188.

[42]   ECF No. 3-1 at 2.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).    Under *Strickland*, a petitioner seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Id*. at 697.    To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).    When assessing whether counsel's performance was deficient, a federal court must always be mindful that "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."    *Harrington v. Richter*, 562 U.S. 86, 110, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Therefore, "[t]o establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness."    *Id*. at 104 (quotation marks omitted).

      To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.    "A reasonable probability means a " 'substantial,' not just 'conceivable,' likelihood of a different result."    *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Richter*, 562 U.S. at 112, 131 S.Ct. 770).    If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may

dispose of the ineffective assistance claim without addressing the other prong.   *Strickland*, 466 U.S. at 697.

The burden is even higher and more demanding on federal habeas review from a judgment on the merits issued by the state courts.   As the Supreme Court has explained, when an ineffective assistance claim is presented in a federal habeas petition:

> [T]he question is whether [the state court] decision involved an "unreasonable application of " this Court's precedent. To meet that standard, a prisoner must show far more than that the state court's decision was "merely wrong" or "even clear error." *Virginia v. LeBlanc*, 582 U.S. ––––, ––––, 137 S.Ct. 1726, 1728, 198 L.Ed.2d 186 (2017) (per curiam) (internal quotation marks omitted). The prisoner must show that the state court's decision is so obviously wrong that its error lies "beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103, 131 S.Ct. 770. Congress "meant" this standard to be "difficult to meet." *Id.*, at 102, 131 S.Ct. 770.

*Shinn v. Kayer*, 592 U.S. 111, 118 (2020).   The overriding question in a federal habeas corpus proceeding is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."   *Richter*, 562 U.S. at 105, 131 S.Ct. 770.   The federal court must accord the state court decision "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."   *Id.* at 101, 131 S.Ct. 770; *see also id.* at 105, 131 S.Ct. 770 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.").   As a result, in effect, the federal court must "afford *both* the state court *and* the defense attorney the benefit of the doubt."   *Woods v. Etherton*, 578 U.S. 113, 117, 136 S.Ct. 1149, 194 L.Ed.2d 333 (2016) (emphasis added; quotation marks omitted).

Mischler asserts that trial counsel failed to conduct a proper investigation to obtain favorable evidence necessary to present a full and proper defense.   Absent meaningful pretrial investigation, he alleges that counsel was unable to introduce the following useful evidence:    (1) public records (*i.e.*, the Orleans Parish Board of Education investigation, the court's actions in Mississippi, or the District Attorney's records showing the reasons he dismissed the charges); and (2) evidence that others had access to his computer and downloaded or obtained the pornography, including (a) details of the time and duration of his hospitalizations and times when others lived at his residences, to compare the dates and times the items were purchased on-line and show he could not have done so; (b) the computer "history, cookies, or cashe files" to see if there were hidden files within the computer, to prove that his computer was not used to download the illicit files; and (c) the location of items that were alleged to have been purchased, but were not found during the search of his residence, to support his assertion that someone else living at his residence bought and took possession of them.[43]

He further claims that counsel performed deficiently in presenting only two defense witnesses besides Mischler to counter the State's "extensive amount of alleged 412.2 witnesses."    He alleges that counsel should have called as defense witnesses: Chris Bellone, Donald Batiste, Scott Williams, Dianna Pervel, Edward Smith, Robert Williams, Jr., and Jay McKinnon.    The first two witnesses are now deceased, but he states that Bellone would

---

[43] ECF No. 3-1 at 15-17.

have contradicted the testimony of S.L. regarding an incident that allegedly occurred in Mississippi when Mischler was a Boy Scout Leader, and Batiste would have rebutted R.L.'s testimony about the Orleans Parish school incident.   For the next four witnesses, he attaches signed statements he submitted to the state courts in connection with his application for post-conviction relief, in which they attest to Mischler's good character, how some of the State's witnesses took advantage of him and stole from him, and how his computer was accessible to many other people.[44]   Mischler provides no statement from McKinnon; he simply alleges that McKinnon would have contradicted the victim's testimony. Mischler argues that each of the witnesses would have testified at trial and either contradicted or impeached the testimony given by the State's witnesses.

Finally, Mischler faults defense counsel for their substandard attorney-client relationship and claims that she was "always too busy" to discuss important issues with him. Because she failed to communicate and never established a good working relationship of trust or advocacy with him, he contends she was "in no position to learn the information or to discuss the wisest course of action in his defense."[45]   Even though he repeatedly "tried to tell [counsel] what was the truth, what was an outright lie, and what was a distortion of the truth when witnesses from the 412.2 crew testified,"[46]   his trial counsel told him to wait

---

[44]   ECF No. 3-2 at 72-75.

[45]   ECF No. 3-1 at 25.

[46]   ECF No. 3-1 at 25.

until later to discuss these matters, and the conversations never happened.

In denying the claims of ineffective assistance of counsel, the state district court reasoned that counsel did not render deficient performance under *Strickland*:

> Mischler alleges that his retained trial counsel failed to present a defense, failed to be an advocate for him and failed to conduct any investigation.   He complains that she called only two witnesses in his defense.    In addition to these general statements, he claims that counsel failed to secure documents regarding prior investigations of him that ended in failure to prosecute or dismissals from (1) Mississippi court records, (2) an Orleans Parish Board of Education investigation, and (3) Orleans Parish court records. He argues that counsel failed to investigate whether someone else downloaded or otherwise obtained the pornography.    He claims counsel did not stress that others had access to his computers and did not present evidence of the time and duration of his hospital stays to show that he could not perform the criminal acts that were asserted against him, nor could he download the child pornography. He asserts counsel did not search his computer for hidden files to show that nothing was there.    He argues counsel should have performed an investigation to locate pornographic material purchased through his computer but not found at his residence.
>
> Mischler also contends that counsel failed to investigate and secure witnesses. Specifically, Mischler names someone he asserts could have rebutted the testimony regarding an incident which occurred almost 40 years ago when petitioner was a Boy Scout leader.    Mischler also named a person who could have testified as to the School Board investigation of Mischler when he was a teacher.    Both of those persons are now deceased, according to the petitioner.    Mischler attaches the signed statements of four persons whom he claims should have been called by the defense.   He asserts these four persons would have discussed the motivations of the witnesses who presented other crimes evidence and the access they had to his computer. He also contends counsel failed to present impeachment evidence against J.S., one of his accusers.
>
> The Court begins its analysis acknowledging there is a strong presumption that counsel has exercised reasonable professional judgment.    *Tillman*, 2015-0635, p. 5, 175 So.3d at 953.    With regard to the documents which Mischler claims should have been obtained by counsel, the Court notes that

Mischler attaches affidavits indicating the court records from both Mississippi and Orleans Parish were destroyed in Hurricane Katrina. There is no indication from the petitioner that any records exist involving any Orleans Parish School Board investigation of Mischler. Counsel cannot be found to be ineffective for failing to obtain documents that do not exist. Trial counsel does not provide ineffective assistance when she fails to take futile steps. *See Tillman*, 2015-0635, p. 1; 175 So.3d 950, citing *State v. Kenner*, 336 So.2d 824, 831 (La. 1976) and *State v. Williams*, 613 So.2d 252, 256-57 (La. App. 1 Cir. 1992).

With regard to the testimonies and allegations of prior criminal acts occurring in Mississippi, Arkansas and Louisiana, the record shows that evidence was adduced and trial counsel argued the fact that previous investigations against Mischler were dismissed, or resulted in charges being dropped or found insufficient. *See ex.* Vol. 5, p. 1093. The Court finds there is no factual basis for relief, as the record shows that the information Mischler claims should have been investigated further was presented to the jury. *See* La. C.Cr.P. art. 926(B)(3).

Likewise, the trial transcript shows that there was abundant testimony that others had access to Mischler's computer, which is referenced by Mischler himself in his application. *See* Application, p. 23 (W.G. testified the computer was password protected, but "[a]ll the other witnesses testified that the desktop computer was open to everyone."). Trial counsel included this information in closing argument, arguing that anyone could have had access to Mischler's computer and that many people were in and out of his house. *See* Vol. 5, p. 1088.

Contrary to petitioner's claim, trial counsel argued that testimony adduced at trial showed there was no indication of files containing child pornography on Mischler's computer. *See* Vol. 5, p. 1088. Mischler's assertion that further investigation needed to be performed, in order to further prove that nothing existed, is meritless. Trial counsel highlighted the fact that most of the pornography that was ordered from Mischler's computer was not found at Mischler's house during the search. *See* Vol. 5, p. 1088-89. Trial counsel elicited testimony about Mischler's hospital stays and illnesses and argued in closing that his illness would have prevented him from committing the acts alleged against him, or downloading the pornography. *See* Vol. 5, p. 1090, 1094. The record shows that petitioner's counsel pointed out the lack of detail in the testimony of J.S. and the impossibility of Mischler being able to do

what was alleged. *See* Vol. 5, p. 1089-1090. The Court finds that the record supports the conclusion that trial counsel affirmatively brought to the jury's attention each of the topics which Mischler asserts were not adequately presented.

The Court finds that Mischler has failed to prove that counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in a criminal case. The first prong of the *Strickland* analysis has not been established for any of the instances of ineffective assistance raised by Mischler, *supra*.   So finding, the Court determines that Mischler is not entitled to post-conviction relief on these grounds.[47]

The Louisiana First Circuit summarily denied relief.   The Louisiana Supreme Court denied relief finding that he failed to show that he received ineffective assistance of counsel under the standard of *Strickland*.

Here, the state courts reasonably determined that counsel was not deficient in failing to obtain documentation or testimony to further support what was already adduced at trial regarding his prior criminal investigations or prosecutions.   "To succeed on a claim that counsel failed to investigate, 'a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial.' "   *Thomas v. Lumpkin*, 995 F.3d 432, 451 (5th Cir. 2021) (citing *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).   Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."   *Strickland*, 466 U.S. at 690–91.   While counsel is required to undertake a reasonable investigation,

---

[47] ECF No. 10-10 at 126-28.

counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

First, Mischler contradicts his own allegation that existing records would have strengthened the defense had they been obtained. Indeed, as the state district court observed, Mischler submits evidence showing the court records he references were unavailable due to Hurricane Katrina.[48] And his allegation that public records from an Orleans Parish school board investigation existed and could have benefitted the defense is entirely unsupported and conclusory. Second, the jury was made aware that no action was taken against Mischler despite the allegations. The accusers themselves testified to that fact and Mischler confirmed it when he testified in his own defense. Therefore, the records of an investigation would have added little or nothing to the defense. The state court reasonably concluded that counsel did not perform deficiently when she failed to take futile steps to locate the records.

Mischler claims that counsel failed to investigate the computer's history, cookies or cashe files to confirm that there were no hidden files on his computer. He argues that the evidence was critical to show that his computer was not used to download illicit files, thereby proving that someone else downloaded or otherwise obtained the pornography. He offers an affidavit by Wayne Labit that attempts were made to do so, but he was unable to obtain a computer investigator to conduct the search on Mischler's behalf. He also alleges that his

---

[48]  ECF No. 3-2 at 76-77.

sister, Darlene Smith, took the computer to be examined and attaches a report which shows the search found no hidden files on the computer.    As the state district court reasonably determined, "counsel argued that testimony adduced at trial showed there was no indication of files containing child pornography on Mischler's computer. See Vol. 5, p. 1088."    As counsel elicited on cross-examination of Richard Lee, the senior forensic computer analyst with the U.S. Postal Inspection Service, the pornography was recovered on thumb drives next to the computer in Mischler's bedroom.    Lee conducted a preview of Mischler's computer on the scene, found nothing incriminating, and therefore did not conduct an in-depth forensic exam on the computer.[49]    Inspector Allison Hoffine testified similarly on cross-examination that the images were located on thumb drives not connected to the computer and no pornography was found on Mischler's computer.[50]    As the state court properly found, counsel did not perform deficiently in failing to expend money and resources on investigation only to "confirm" that nothing was found on his computer.

The jury simply accepted the compelling evidence offered by the State connecting the pornographic items to Mischler (*i.e.*, the email/IP address associated with the physical residence in Mischler's name and the location of the thumb drives and pornographic material), despite the defense's theory and the evidence elicited and summarized by defense counsel in closing that his computer was accessible by everyone so theoretically someone

---

[49]  ECF No. 10-3 at 15.

[50]  ECF No. 10-3 at 136-140.

else "could" have purchased the pornography, that he was seriously ill and hospitalized numerous times during the relevant time-period, and that some materials he supposedly ordered were never located during the search of his home.    Thus, further investigation, as Mischler suggests, regarding "discrepancies in dates of when pornographic media was added to the thumb drives and when [Mischler] was ill or in the hospital making it impossible for him to have done so, [e]vidence of the time and duration of Mischler's hospital stays, the dates that others were living in his home and had access to his computer and comparison to the dates and time the items were purchased on-line," to prove that someone else purchased the items using his computer, would have been futile.[51]    As the state court reasonably concluded, the record demonstrates that adequate evidence was adduced at trial by defense counsel to advance this theory, which simply proved unbelievable and unsuccessful.[52]

As for complaints of uncalled witnesses, these typically lack merit on federal habeas review, because the allegations tend to be largely speculative concerning what a proposed witness would have testified to at trial.    *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *see also Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) ("Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely

---

[51]  ECF No. 3-1 at 15-16.

[52]  ECF No. 10-4 at 131-37, 230-34 [counsel introduced medical issues through Mischler's testimony to extent allowed by court]; ECF No. 10-5 at 2-5, 57.

speculative.") (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).   A petitioner must identify the witnesses and establish, by affidavit or otherwise, what the witnesses would have testified to at trial.   *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).   A petitioner must not only show that the witness' proposed testimony would have been favorable, but also that the witness would have testified at trial.   *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).   Mischler provides the names of two deceased people, Bellone, a Boy Scouts staffer, and Batiste, a school principal.   Although he claims that their testimony would have rebutted the testimony of S.L. and R.L., respectively, he offers nothing to support that speculative allegation.   The allegation they would have testified for the defense is purely conclusory.   Moreover, he cannot show that their testimony would have strengthened the defense given the accusers' candid admissions that nothing came of their allegations against Mischler.

Mischler offers signed statements in support from four purported defense witnesses who would have testified favorably for the defense.   These witnesses include Scott Williams, who states he would have testified as to the untruths offered by the State's witnesses against his godfather and uncle Mischler, and how he was very ill during the time span the incidents occurred, and how the State's witnesses had unlimited access to his house and computer and abused his good will by stealing from him.   His sister, Dianna Pervel; his brother-in-law, Edward Smith; and his nephew, Robert Williams, Jr., would have offered similar testimony.   However, Mischler failed to show that counsel performed deficiently or

that the testimony would have changed the outcome at trial considering the evidence already adduced at trial regarding these issues.    It would have been essentially cumulative to the testimony offered by his sister, Darlene Smith; his great-niece, Amber Giordano; and Mischler himself.    Mischler's contention that testimony from six family-member defense witnesses rather than two would have strengthened the defense and somehow changed the outcome is untenable given that the jury obviously rejected the defense theory sufficiently advanced by trial counsel.

As for investigating J.S.'s friend, Jay McKinnon, to "learn his version of the events" regarding the incident that occurred between J.S. and Mischler in the FEMA trailer, there is no evidence to suggest that McKinnon was present during the sexual encounter.    J.S. testified that the private encounter happened after McKinnon left and stopped when he returned.[53]    Mishler offers no affidavit from McKinnon that he was willing to testify for the defense or that he had any purported favorable testimony to offer.    His allegation is purely speculative and therefore unsupported and conclusory.

Finally, Mischler's allegations of "inadequate consultation" by trial counsel amount to nothing more than her brevity during trial when he "tried to tell her what was the truth, what was an outright lie, and what was a distortion of the truth" during the testimony of the "412.2 crew."[54]    Counsel's time to discuss this in depth with her client was undoubtedly limited

---

[53]  ECF No. 10-3 at 152-54.

[54]  ECF No. 3-1 at 25.

under the circumstances.    Moreover, "brevity of consultation time" with a client does not, by itself, rise to the level of ineffective assistance of counsel.    *See Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984).    Here, the record supports the determination that trial counsel was prepared for trial, thoroughly and effectively cross-examined the state witnesses, highlighted inconsistencies to discredit them, and sufficiently advanced the defense theory.    As the state district court reasoned and the record supports:

> [T]rial counsel elicited testimony about Mischler's hospital stays and illnesses and argued in closing that his illness would have prevented him from committing the acts alleged against him, or downloading the pornography. See Vol. 5, p. 1090, 1094.    The record shows that petitioner's counsel pointed out the lack of detail in the testimony of J.S. and the impossibility of Mischler being able to do what was alleged. See Vol. 5, p. 1089-1090. The Court finds that the record supports the conclusion that trial counsel affirmatively brought to the jury's attention each of the topics which Mischler asserts were not adequately presented.

Mischler offers no objective support for his conclusory assertion that defense counsel's consultation was inadequate.

In summary, Mischler has not shown that the state-court decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    Accordingly, under the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, it is **RECOMMENDED** that Mischler's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[55]

New Orleans, Louisiana, this ___26th___ day of ___February___, 2024.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[55]  *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.